(92 N. W. Rep. 836.)

---

## ERICKSON et al. vs. CASS COUNTY et al.

**Drainage Act—Due Process of Law.**

> Chapter 51, Laws 1895, as amended by chapter 79, Laws 1899, now embodied in chapter 21 of the Political Code, Rev. Codes, 1899, and embracing sections 1444 to 1474, inclusive, known as the "Drainage Law," provides a hearing for landowners upon notice before assessments for benefits become final, and it is not, therefore, vulnerable to the objection that it deprives such owners of their property without due prcess of law.

**Title of Act.**

> The amendatory act, chapter 79, Laws 1899, entitled "An act to amend section * * * 1466 of the Revised Codes, relating to the establishment, construction and maintenance of drains,"· does not violate section 61 of the state constitution, which provides that "no bill shall embrace more than one subject, which shall be expressed in its title. * * *"

**Amendment of Statute.**

> It is not necessary that the provisions embodied in an amendment to a section of a statute shall relate directly to the particular provisions contained in the section amended. It is sufficient if the subject-matter of the amendment is germane to the subject of the act of which the amended section is a part, and is within the title of the original act.

**Issuance of Bonds.**

> Landowners who are assessed for benefits under this act are not deprived of their property without due process of law by the issu-

ance of the interest-bearing bonds to defray the cost of constructing drains, and the postponement of their assessments and divisions thereof into as many parts as the bonds have years to run, as authorized by section 1474, Rev. Codes.

## School Lands held in Trust.

Lands granted by the United States to the state for school purposes are held in trust, and are not subject to taxation or assessment for benefits arising from the construction of drains.

## Proceedings of Drainage Board not Invalid.

It is *held*, upon a trial anew in an action to enjoin the collection of drainage assessments, that the board of drain commissioners complied with the requirements of section 1454, Rev. Codes, as to the publication and posting of notices of hearing upon assessments, and that the assessment notice was in proper form, and was legally posted and published; further, that the proceedings of the drainage board in establishing and constructing the drain in question in this case were not invalid by reason of certain alleged defects in the right of way deeds.

## Board a Tribunal to Determine Benefits.

The board of drain commissioners is made the tribunal by statute to determine what lands are benefitted by the construction of drains, and to apportion the cost thereof according to benefits, and, in the absence of the allegation and proof that they acted fraudulently, their determination is not open to collateral attack, and is conclusive. Where the jurisdiction of the board to act is established by the filing of a sufficient petition for the construction of a drain, and proper notice of hearing has been given, courts will not inquire into the correctness of their determination upon questions within their jurisdiction, including the assessment of benefits.

## Legitimate Charges.

It is *held* that certain items which were included in the cost of the drain involved in this case by the board of drain commissioners, which are objected to by appellants, and are referred to in the opinion, contributed to the construction of the drain, and were legitimate charges, under section 1456, Rev. Codes, which authorizes said board to include in the cost of drains such expenses as contribute to their establishment, construction, and maintenance.

## Assessments not "Conjectural" or "Speculative."

It is *held* that the assessments authorized to be imposed upon the lands by section 1452, Rev. Codes, are for benefits which are special to the land assessed, and are not what are commonly termed "conjectural" or "speculative" benefits.

## Collection of Assessments will not be Enjoined.

A court of equity will not extend its extraordinary remedy of injunction to prevent the collection of assessments for benefits imposed to pay the cost of constructing drains, when the parties seeking such relief have been actively or impliedly consenting parties to their construction, and to the proceedings which led to the assessments, whether such assessments are legally valid or not; and in such actions parties who have petitioned for and induced the construction of drains cannot be heard to question either the constitutionality of the law under which the drain was constructed,

or the legality of the proceedings taken thereunder, for the purpose of defeating their assessments.

**Estoppel.**

> It is *held*, on the facts detailed in the opinion, that the plaintiffs are estopped from asserting the invalidity of the assessments imposed upon their lands by the board of drain commissioners of Cass county to defray the cost of constructing Argusville drain No. 13.

**Chapter 25, Laws 1901, Unconstitutional.**

> Chapter 25, Laws 1901, entitled "An act to provide for the allowance and taxation of costs for additional attorneys' fees against the defendants in actions to enjoin drainage proceedings or the levy and collection of taxes and assessments therefor," is invalid, under section 61 of the state constitution, for the reason that the real subject of the act, which is the allowance and taxation of additional attorneys' fees against the plaintiffs in such actions, is not expressed in the title.

Appeal from district court, Cass county; *Lauder, J.*

Action by August Erickson and others against Cass county, the board of county commissioners of Cass county, and O. J. Olson, auditor. Judgment for defendants, and plaintiffs appeal. Modified and affirmed.

*J. E. Robinson,* for appellants.

*Ball, Watson & Maclay,* for respondents.

YOUNG, J. The plaintiffs, who are 52 in number, united in instituting this action for the purpose of enjoining the county auditor of Cass county from extending upon the tax lists of that county certain assessments against their lands, made by the drain commissioners of that county, to defray the cost of the construction of Argusville drain No. 13, and to enjoin the county commissioners of said county from issuing drainage bonds to cover the expense incurred in its construction. The complaint alleges "that in all things pertaining to the construction of said drain, the assessments of benefits under the same, and the awarding of contracts for such construction, and the issuing of warrants for the expense of the same, and in all other matters thereto pertaining, the said drain commissioners failed to comply with the requirements of the law, and by reason of such failure all their doings as such drain commissioners are entirely void," in this: That "the petition for the drain was not signed by the owners or legal representatives of such lands as, in the aggregate, are liable to assessment for the major portion of the cost thereof"; that the drain was established without any evidence showing the interest of the petitioners in the lands liable to assessment; that the same was constructed at an expense of $42,000; that the total benefits to be derived from said drain do not amount to more than one-third part of the cost thereof, and that the total cost should not have exceeded $12,000; that contracts for the construction of the drain were not let in such a manner as to secure fair and honest competition; that a large portion of the expense allowed for the construction of the

drain, to wit, half the expense, or more, was allowed upon the cost of a drain formerly constructed under the drainage laws of 1895, which could not be legally assessed against their lands; that the commissioners allowed to themselves and others large and unauthorized sums as expenses for constructing said drain; that they failed to make any legal assessment of benefits; that they charged against the lands of plaintiffs a sum or percentage equal to three times the amount of the benefits to said lands; that they failed to make charges against other lands in the vicinity of the ditch which were benefitted by its construction; that they did not give 10 days' notice of the time and place of their meeting for the purpose of reviewing the assessments, and did not hold any session as a board for the purpose of such review. The complaint further alleges that the county commissioners of Cass county intend to issue negotiable bonds, under section 31 of chapter 51 of the Laws of 1895, to the full amount which the said drainage commissioners have allowed as the expense of constructing said Argusville drain No. 13. The answer denies generally all the allegations of the complaint, avers that all of the proceedings relating to said drain and the assessment of benefits therefor were in accordance with the requirements of the statute, and admits that the plaintiffs own lands which have been assessed, and that the county commissioners of Cass county intend to issue bonds as alleged in the complaint.

The trial court found that the drain in question was established upon a proper and sufficient petition, and "that the board of drain commissioners complied fully with the requirements of law in establishing and constructing said drain, in making assessments of benefits under and for the same, and in all other matters pertaining thereto;" further, "that the lands of the plaintiffs, and each of them, were and are benefited, both directly and indirectly, by the construction of said drain, and that the assessment for benefits laid thereon by the board of drain commissioners were and are in all things in accordance with such benefits, and are legal and valid charges upon such property." The court further found that the plaintiffs, and each of them, at all times had knowledge that the drain was being constructed, during the time that the construction was in progress; and of the fact that assessments had been made and levied thereon, and that they permitted said proceedings to progress, and said drain to be constructed, and the sum of about $42,000 to be paid out, or liability therefor to be incurred, for the construction of said drain, without applying to the district court or any other court for preventive or other relief. The court further found that $750 is a reasonable amount to be taxed as attorneys' fees against the plaintiffs, in addition to the statutory costs and disbursements. From the foregoing facts the court found, as conclusions of law, that the assessments against plaintiffs' lands are legal charges thereon; that plaintiffs, and each of them, are estopped to question the validity or legality of said assessments; that plaintiffs are not entitled to any

relief, and the defendants are entitled to recover and have taxed against the plaintiffs, as part of the costs and disbursements in this action, the sum of $750 as attorneys' fees, in addition to the statutory costs and disbursements.   From the judgment entered in pursuance of such findings the plaintiffs have appealed to this court for a review of the entire case.

The record presented in this court contains a large amount of testimony.   There are, however, but few facts in dispute, and, as we shall hereafter see, they are but of minor importance.   A proper determination of the case upon this appeal will depend almost entirely upon the solution of a number of legal questions, to which we will first turn our attention.   It is urged at the outset that the entire ·drainage law (chapter 51 of the Laws of 1895, with amendments, now known as "Chapter 21 of the Political Code, Revised Codes of 1899") is void. The reason assigned for this contention is that "under it taxes are levied without due process of law, contrary to amendment 14 of the federal constitution."   No reasons are advanced, which, in our opinion, tend to show that assessments authorized by the act in question are vulnerable to the objection urged.   If we understand counsel's position, it is that the statute does not accord to persons whose lands are subjected to assessment a sufficient hearing.   In this counsel is in error.   Before any assessment authorized by this act becomes final, it is subject to review upon notice.   Sections 1451 and 1452 provide for such review, and that it shall be upon notice of the time when and place where the review is to be had.   It is true, several acts are required to be done by the drain commissioners prior to the assessment and hearing.   These include an inspection of the route by the drain commissioners, a survey of the same, the making of the specifications, plats, and profiles, contracts for the right of way, and the order establishing the drain; all of which are done without a hearing.   These steps, however, are altogether preliminary, and do not, in themselves, impose any burden upon the landowner.   The question as to what lands shall be subjected to assessment and what proportion of the burden each tract shall bear is determined later, and upon notice.   It is well settled that, where provision is made "for notice to and hearing of each proprietor at some stage of the proceedings upon the question of what proportion of the taxes shall be assessed upon his land, there is no taking of his property without due process of law."   McMillen v. Anderson, 95 U. S. 37, 24 L. Ed. 335; Davidson v. City of New Orleans, 96 U. S. 97, 24 L. Ed. 616; Hager v. Reclamation Dist No. 108, 111 U. S. 701, 4 Sup. Ct. 663, 28 L. Ed. 569; Spencer v. Merchant, 125 U. S. 345, 8 Sup. Ct. 921. 31 L. Ed. 763; Wilson v. City of Salem (Or.) 34 Pac. 9.   The rule announced by Mr. Justice Miller in Davidson v. City of New Orleans, supra, and approved in Hager v. Reclamation Dist. No. 108, supra, is:   "That whenever, by the laws of a state, or by state authority, a tax, assessment, servitude, or other burden is imposed upon property for the public use, whether it be of the whole state or of some more limited portion of the community, and those laws provide for

a mode of confirming or contesting the charge thus imposed in the ordinary courts of justice, with such notice to the person or such proceeding in regard to the property as is appropriate to the nature of the case, the judgment in such proceeding cannot be said to deprive the owner of his property without due process of law, however obnoxious it may be to other objections." In *State* v. *Certain Lands in Redwood Co.* (Minn.) 42 N. W. Rep. 473, Mitchell, J., in answering a contention "that in proceedings in the exercise of the taxing power the property owner is entitled to notice, and to be heard in each preliminary step of the proceedings *pari passu* with their progress," said: "We know of no case where it was ever held that a party was entitled to notice of and to be heard in each step in tax proceedings as it is taken. We doubt whether any tax law ever provided for any such thing. The principle running through all the cases is that a law does not infringe upon the constitutional provision under consideration if the property owner has an opportunity to question the validity or amount of the tax, either before that amount is determined, or in subsequent proceedings for its enforcement." The hearing afforded to landowners by the act in question is adapted to the necessities of proceedings of this nature, and gives an opportunity to persons whose property is assessed for benefits to contest the assessment. The supreme court of the United States in affirming *Voight* v. *City of Detroit* (Mich.) 82 N. W. Rep. 253, 184 U. S. 115, 22 Sup. Ct. 337, 46 L. Ed. 459, said, as to the sufficiency of the hearing given by the Michigan law on assessments for benefits, which was before the city council: "It would be difficult to find any provision fairer than this in purpose, and which so essentially satisfies every requirement of due process of law. And such purpose cannot be defeated if a hearing to the property owner can prevent defeat. He is given a thoroughly efficient opportunity to be heard to test the legality of the charge upon him, and it is only with the charge upon him that he is concerned, and of that alone can he complain. In the legality of that charge is necessarily involved the legality of all which precedes it, and of which it is the consequence."

Counsel for appellant also attacks the constitutionality of the amendment to section 1466, Rev. Codes 1899, under which the board of drain commissioners added the sum of $13,000 to the cost of the drain in question. This sum was allowed by the board as compensation for services rendered, work done, and money expended upon a drain formerly constructed or partially constructed upon the route of the present drain; the proceedings under such former drain having been held invalid, and the same having been abandoned. It was determined by the board that the work done and services rendered on the former drain contributed to the present drain to the extent of the sum so allowed. The authority for their action is found in section 1466, Rev. Codes 1895, as amended by chapter 79, Laws 1899, now known as "section 1466, Rev. Rodes 1899." Neither the original section nor any portion of the drainage law, chapter 51, Laws 1895, of which setion 1466 was a part, conferred any such authority upon the drain commissioners. The authority exists, if at all, solely by

virtue of the provisions added to section 1466 by the amendatory act, chapter 79, Laws 1899. It is not contended that the provisions added by the amendment are not broad enough to authorize the action taken by the board, or that they do not relate to the subject of the original act of which section 1466 is a part, or that the provisions embodied in the amendment are not just, or that they are not proper in a comprehensive drainage law. The supreme court of Michigan, in *Anketall* v. *Hayward,* 78 N. W. Rep. 557, in passing upon the provisions of the drainage law of that state, similar to those embodied in the amendment here in question, said: "It is competent for the legislature to provide for the completion of a partly finished drain, and point out a way for the correction of errors, so as to make it possible to complete it, although the expense is increased thereby. The increased expense must be paid by those who are benefited by the drain as a part of the cost. *Brady* v. *Hayward* (Mich.) 72 N. W. Rep. 233; *Hauser* v. *Burbank* (Mich.) 76 N. W. Rep. 109." See, also, *Curran* v. *Board* (Minn.) 57 N. W. Rep. 1070. The sole ground of appellants' attack upon the amendment is that its provisions are not germane to the section amended, or, as stated in the language of counsel, "the annex to section 1466, Rev. Codes, by chapter 79, Laws 1899 (under which $13,000 was added to the assessment), is not germane to the original section, and hence it contravenes setion 61 of the constitution." The question presented is new in this state, and is not entirely free from difficulty. The title of the original drainage law (chapter 51, Laws 1895) is as follows: "An act to provide for the establishment, construction and maintenance of drains in this state." The act embraces 32 sections, all of which were embodied in the Revised Codes of 1895 in the order in which they appeared in the original act, and were numbered sections 1444 to 1474, inclusive. They are also contained in the Revised Codes of 1899 under the same numbers, as amended by chapter 79, Laws 1899. The title of the amendatory act (chapter 79, Laws 1899) is as follows: "An act to amend sections 1447, 1448, 1450, 1452, 1453, 1454, 1457, and 1466 of the Revised Codes, relating to the establishment, construction and maintenance of drains." Section 1466, prior to its amendment, referred entirely to the duties of courts in actions to enjoin assessments or to annul drainage proceedings. Under the terms of said section they were required to disregard errors and irregularities in the proceedings establishing and constructing drains. Authority was given to them, upon the application of either party to appoint viewers, and upon a final hearing to make orders affirming assessments in whole or in part, or require refundment, in whole or in part, of assessments paid under protest, as justice might require. The section, as amended, retains these provisions without change, but adds thereto certain further provisions, whereby drain commissioners are authorized to establish drains upon the route of drains which have been abandoned or been declared invalid, to determine the extent of the benefit to the new drain of the services rendered, money expended, and work done under the invalid or abandoned

proceedings, and to issue warrants therefor to the extent of the benefit so determined; all of which is required to be done at a meeting of the board held pursuant to 10 days' notice, at which all persons interested are entitled to be heard. It is patent that the provisions of section 1466, prior to its amendment, were germane to the subject of legislation expressed in the title of the act of which it was a part. It is also equally apparent that the provisions added by the amendment also relate to that subject, to wit, the "establishment, construction and maintenance of drains in this state." It is also apparent that the particular matters treated of in the original section and the amendment are not the same. The former relate to proceedings in court to contest assessments and to annul drainage proceedings. The latter relates to the location of new drains upon the route of void or abandoned drains, the determination of the extent to which the new drain is benefited by the proceedings under former drains, and the payment for such benefits. From this dissimilarity in the provisions in the original section and the amendment counsel for the appellants concludes that the amendment is invalid, and within the inhibition of section 61 of the state constitution, which reads as follows: "No bill shall embrace more than one subject, which shall be expressed in its title, * * *" This section has been construed by this court in a number of cases, and its purposes and determination fully set forth. See *State* v. *Woodmansee,* 1 N. D. 246, 46 N. W. Rep. 970, 11 L. R. A. 420; *State* v. *Haas,* 2 N. D. 202, 50 N. W. Rep. 254; *State* v. *Nomland,* 3 N. D. 427, 57 N. W. Rep. 85, 44 Am. St. Rep. 572; *Richard* v. *Stark Co.,* 8 N. D. 392, 79 N. W. Rep. 863; *Power* v. *Kitching,* 10 N. D. 254, 86 N. W. Rep. 737; *Divet* v. *Richland Co.,* 8 N. D. 65, 76 N. W. Rep. 993; *Paine* v. *Dickey Co.,* 8 N. D. 581, 80 N. W. Rep. 770. For the purpose of this case it is sufficient to say that the requirement that a bill shall embrace but one subject of legislation, and that that subject shall be expressed in the title of the bill, is mandatory, and to repeat the following language used by this court in *State* v. *North Dakota Children's Home Soc.,* 10 N. D. 493, 88 N. W. Rep. 273, in referring to this section: "The constitution only requires that the act shall contain a single subject or object of legislation, and that subject or object shall be expressed in the title. It is not intended, neither is it required, that the separate means or instrumentalities necessary to accomplish the object of legislation shall be embodied in separate acts. 'Such a requirement would be absurd, rendering legislative acts fragmentary, and they would often fail of their intended effect from the inherent difficulty of expressing the legislative will when restricted to such narrow bounds.'" The title involved in this case is that of an amendatory, and not an original, act. Eliminating all reference to other sections amended by it, the title of the act is: "An act to amend section 1466, Revised Codes, relating to the establishment, construction and maintenance of drains."

Appellants' counsel contends, in substance, that section 61 of the state constitution, before quoted, prohibits an amendment to a section

of a statute when the subject-matter of the amendment differs from
the subject-matter contained in the section amended, even though
the amendment relates to the same subject of legislation, and is
within the title of the act amended. The cases are in confusion
upon this point, and the conflict does not entirely arise because of
differences in the constitutional provisions upon which they are
based. The position of appellants' counsel has the support of a
number of cases. We are of opinion, however, that the better reason
and the best-considered cases, including those under constitutions
like our own, are against this view, and are to the effect that a
section of a statute may be amended so as to include provisions which
are not directly related to those embraced in the original section,
provided the new provisions are germane to the subject of the act
amended as expressed in its title. The purpose of section 61, supra,
is to limit the scope of every act to one subject of legislation,
whether it be an original or an amendatory act, and we are unable
to see that it is violated if the provisions of the amendment are
germane to the subject of the act amended and the purpose to amend
it is sufficiently disclosed in the title of the amendatory act. The
precise character of the proposed amendment is required to be dis-
closed by section 64 of the constitution, which requires that it must
be published at length as amended. This section—and it is not found
in many of the states from which decisions are cited in support of
appellants' contention—reads as follows: "No bill shall be revised
or amended, nor the provisions thereof extended or incorporated in
any other bill by reference to its title only, but so much thereof as
is revised, amended or extended or so incorporated shall be re-enacted
and published at length." This section, by requiring publication
of the section as amended, affords the same protection to the members
of the legislature and to the public against surreptitious legislation
by way of amendment as is afforded by section 61, which requires
the subject of legislation to be expressed in the title of the act. In
California the provisions of sections 61 and 64, supra, are combined
in one section,—article 4, § 24, Const. 1879, The precise question we
are considering has been before the supreme court of that state in a
number of cases. In the case of *San Francisco & N. P. R. Co.* v.
*State Board of Equalization,* 60 Cal. 12, that court said: "It has
been repeatedly assumed here that under the present constitution a
title expressing the object of an act to be 'to amend section——' of
a named act, 'relating to' the particular object treated of in the body
of the act, was a compliance with section 24, art. 4. The title of the
act now under consideration shows that the sections added are to be
added to the Political Code, and relate to the object already men-
tioned." In the next case before that court—*People* v. *Parvin,* 74
Cal. 549, 16 Pac. Rep. 490—the court said: "With reference to a
statute passed since the constitution of 1879 took effect, there can be
no doubt that a section of such a statute, the statute in itself being
properly entitled, may be amended by referring in the title of the

amendment to the title of the act amended, and re-enacted as amended. If, in such cases, the title of the original statute did not state its subject, both the statute and any amendment of it would be void; but it is enough if the title of the statute is recited. It is not necessary that the subject of the particular section amended shall be stated in the title of the amendatory act. It is to be understood, of course, that, if any subject shall be embraced in a section in an act passed under the present constitution which shall not be expressed in the title of the act, the section is void. It follows, also, that under pretense of amending a particular section the legislature cannot legislate upon a subject not embraced in the title of the original act. * * * It would sometinmes give fuller notice to the members of the legislature if the title of a bill for amending a section of the act embraced a statement of the matter contained in the appropriate headnote, or its equivalent. * * * But the constitution only requires that the title of the act which it is proposed to amend shall be clearly mentioned or recited in the act amending a particular section. This being done, the sufficiency of the title of the amendatory act depends upon the sufficiency of the title of the original act." The title involved in the above case was, "An act to amend section 3481 of the Political Code." The above case was followed in *People* v. *Dobbins,* 73 Cal. 257, 14 Pac. Rep. 860. The test in that state is whether the amendment is embraced within the title of the act amended. In re *Werner,* 129 Cal. 567, 62 Pac. Rep. 97. The supreme court of Missouri, in construing a constitutional provision of that state in all respects like section 61, supra, in *City of St. Louis* v. *Tiefel,* 42 Mo. 578-590, said : "While the clause was embodied in the organic law for the protection of the state and the legislature, it was not designed to be unnecessarily restrictive in its operation, nor to embarress legislation by compelling a needless multiplication of separate bills. It was only the intention to prevent the conjoining in the same act of incongruous matters and of subjects having no legitimate connection or relation to each other. If the title of an original act is sufficient to embrace the provisions contained in an amendatory act, it will be good, and it need not be inquired whether the title of the amendatory act would of itself be sufficient. *Brandon* v. *State,* 16 Ind. 197." *State* v. *Mead,* 71 Mo. 267, is to the same effect. The constitution of Indiana contains provisions almost identical with sections 61 and 64. The supreme court of that state, in *Brandon* v. *State,* 16 Ind. 197 held that, if the title of the original act is sufficient to embrace the provision in question, it is unnecessary to inquire whether the title of the amendatory act would of itself be sufficient. See, also, *State* v. *Bowers,* 14 Ind. 195. Also, *Shoemaker* v. *Smith,* 37 Ind. 122. The last case is important in holding that the different provisions contained in different sections of an act, all having a common subject, are not to be regarded as so many different subjects, but as having reference to only one general subject. See, also, *Improvement Co.* v. *Arnold,* 46 Wis. 214-225, 49 N. W Rep. 971 ; *Phillips* v. *Town of, Albany,* 28 Wis. 340 ; *Wheeler* v. *State,* 23 Ga. 9.

In this case it is not and cannot be contended that the title and subject of the original act, of which the amended section is a part, is not sufficiently designated in the title of the amendatory act wherein the several sections amended are described as "relating to the establishment, construction and maintenance of drains," which is, to all intents and purposes, the title of the original act; and, as we have seen, the provisions contained in the amended act are germane to the subject of the original act as expressed in its title. This is all the constitution requires. The following cases may be cited as supporting the views advanced by the appellants' counsel: *Harland* v. *Territory* (Wash. T.) 13 Pac. Rep. 453; *State* v. *Tibbets,* 52 Neb. 228, 71 N. W. Rep. 990, 66 Am. St. 492; *State* v. *Bowen,* 54 Neb. 211, 74 N. W. Rep. 615; *State* v. *Cornell* (Neb.) 74 N. W. Rep. 432; *Armstrong* v. *Mayer* (Neb.) 83 N. W. Rep. 401; *Miller* v. *Hurford,* 11 Neb. 377, 9 N. W. Rep. 477; *Ex parte Cowert,* 92 Ala, 94, 9 South. Rep. 225; *Ex parte Hewlett* (Nev.) 40 Pac. Rep. 96. Several of the Nebraska cases above cited go to the full extent of holding that "no amendment is permissible which is not germane to the subject-matter of the particular original section purposed to be changed." These decisions are based upon a constitutional provision different from our own, but not so dissimilar as to account for the conclusion reached. It is apparent that the fallacy in all these cases lies in erroneously assuming that a section of an act is an independent subject of legislation within the meaning of the constitution. Section 61, supra, requires that no bill shall contain more than one subject of legislation, but it has been repeatedly and properly held that the body of the act may contain numerous provisions embodied in different sections, provided only they all relate to the one subject of legislation expressed in the title of the bill. If each separate section of a statute can be said to contain a subject of legislation within the meaning of section 61, it must be of necessity the subject to which all of the various provisions relate, for the reason that, if each section has a subject of its own, and that subject is to be determined wholly by the matter contained in the section, it would, in that event, be necessary to enact each section separately, for otherwise an act embracing more than one section would contain more than one subject of legislation, and fall within the prohibition of section 61, This was not the intention of our constitution makers. A construction which leads to such absurd results cannot be sustained.

The appellants also attack the constitutionality of section 31, c. 51, Laws 1895, now known as "section 1474, Rev. Codes," which authorizes the board of county commissioners to issue interest-bearing bonds, payable in not to exceed 20 years, in such sums as may be necessary, to defray the expense of procuring the right of way and constructing the drain, to be paid out of the revenues derived from the assessment of benefits, and to divide the assessments into as many parts as the bonds have years to run; and further authorizes said board to negotiate the same at not less than par for the

benefit of the persons interested in the drain. It is claimed that under this section the landowner who is assessed is or may be deprived of his property without due process of law, contrary to the fourteenth amendment of the federal constitution. This contention cannot be sustained. The contention of appellants' counsel that "no man can be compelled to pay interest or penalties on taxes or assessments until the amount has been legally charged against him or his property, and until he has had an opportunity to pay the same," has no application to the facts of this case. It has been held in cases where the legislature attempted to authorize a reassessment of real or personal property omitted from the tax rolls without fault of the taxpayer, not only for the amount of the original tax, but including the interest and penalties accruing during the omission, that acts authorizing such reassessments, while not repugnant to the constitutional provision that property shall not be taken without due process of law when a subsequent opportunity for defending in court was afforded, nevertheless are invalid, so far as they relate to back interest and penalties, as being unequal taxation, for the reason that until the amount of the tax is ascertained the owner has no opportunity of paying it, and is not in default, and a person is chargeable with interest only upon his contract to pay it, or for some default of legal duty on his part. *State* v. *Certain Lands in Redwood County* (Minn.) 42 N. W. Rep. 473; *Agens* v. *Mayor*, etc., 37 N. J. Law, 39. We have no such state of facts in this case. The statute in question merely authorizes the county commissioners, acting on behalf of the persons interested in the drain, to provide means for paying the cost of the construction of the same by issuance of bonds, and to postpone the time of payment by dividing the assessments required to pay such cost of construction into as many equal parts as the bonds have years to run. When the assessments are charged against their lands, the owners may pay the same without interest or penalty if they see fit to do so. No authority is cited to the effect that it is beyond the power of the legislature to provide for payment for the construction of drains by the issuance of bonds, and to distribute the assessments as authorized by the section in question. It is a power very frequently conferred and exercised, and, so far as we are informed, it is not open to any constitutional objection. See *Hellman* v. *Shoulters* (Cal.) 44 Pac. Rep. 915; *Davidson* v. *City of New Orleans*, 96 U. S. 100, 24 L. Ed. 618; *Bauman* v. *Ross*, 167 U. S. 548, 17 Sup. Ct. 966, 42 L. Ed. 270; *Martin* v. *Tyler*, 4 N. D. 289, 60 N. W. Rep. 392, 25 L. R. A. 838; *Irrigation Dist.* v. *Bradley*, 164 U. S. 112, 17 Sup. Ct. 56, 41 L. Ed. 369; *People* v. *Swigert* (Ill.) 22 N. E. Rep. 787.

But appellants further contend that the assessments are void because of certain alleged irregularities in the proceedings, to which we will next refer, and that they are, therefore, entitled to the relief which they seek in this action. It is claimed that: (1) "The right of way deeds are void"; that (2) "the assessment notice was not in proper form, and was not legally posted or published"; that (3) "the

lands of the plaintiffs were assessed for the benefits to a school section and to some forty-two other sections unjustly omitted from the assessment"; that (4) "the drain is of no special benefit to the plaintiffs; it adds nothing to the value of their lands"; and that (5) "forty-one thousand dollars, the cost of the drain, and the basis of assessment levied, includes many excessive and many illegal charges." Considering these questions in their order, we may say that it is entirely unnecessary to determine whether the fact that the right of way deeds which are objected to because they run to "the people of Cass county," instead of "Cass county," impairs their validity as conveyances. The deeds were executed and delivered by the grantors for the purpose of conveying the right of way for the drain in question, and possession was given thereunder to the county, which it still retains. The drain was constructed, and a large sum of money expended, in reliance upon such deeds, and no question as to their legal sufficiency has been raised through any direct proceedings by any of the grantors. It is entirely clear that they would be estopped from doing so by the facts recited, and it is equally clear that these plaintiffs cannot question their validity in this collateral way. If the deeds are in fact defective, or insufficient in form and substance, they nevertheless furnish a sufficient basis, in connection with the foregoing facts, to require the execution of conveyances sufficient in form through the aid of a court of equity.

Neither can the objection to the form of the notice of assessment and the sufficiency of the posting and publication of such notices be sustained. The record shows that the notice was published in a newspaper of general circulation ten days prior to the hearing, and five printed copies of such notice were posted in the township traversed by the drain at such points as were likely, in the opinion of the board of drain commisisoners, to secure the greatest publicity for such notices. This was a full compliance with the statute. No form of notice is prescribed by the statute. The form of notice prepared by the board is merely criticized as containing more details than was necessary. If such is the fact, it constitutes no just ground of complaint that the board exercised its judgment on the side of safety.

Neither does the fact that school section No. 16, Wiser township, which lies adjacent to the drain in question, and concededly is benefited by it, was not assessed, furnish any legal ground for complaint. Being school land, it was not assessable, under sections 153, 158 and 163 of the state constitution. This tract is a portion of the lands granted by the United States to the state in trust for school purposes. The provisions of the grant and its acceptance forbid the imposition of assessments. In *Edgerton* v. *School Tp.* (Ind. Sup.) 26 N. E. Rep. 156, the court, in considering this question in a case where a drainage assessment was sought to be imposed, said: "It will thus be seen that these lands came to us as a sacred trust, to be applied exclusively to school purposes, and that the people, by their fundamental law, have placed it beyond the power of even the legis-

lature of the state to make any provision by which the principal of the funds arising from such lands shall be diminished. The state has no power to tax such lands, for, if it were permitted to do so, it could tax them out of existence, and divert them to the use of the state in the payment of ordinary expenses; * * * and * * * assessments should be made against such lands only as are subject to taxation." See, also, *City of Chicago* v. *People*, 80 Ill. 384; *People* v. *Trustees of Schools of Tp. 19* (Ill.) 7 N. E. Rep. 262.

The question as to whether the plaintiffs' lands were benefited by the construction of the drain to the amount of their assessment, and whether other assessable lands were omitted from the assessment, is one we cannot consider. There is no allegation or evidence to the effect that in including or excluding any lands from the assessment the board acted fraudulently. If the facts are as appellants claim they merely establish errors of judgment in the tribunal clothed with authority to pass upon the question of benefits. The legislature had the undoubted power to commit to the drainage board the ascertainment of the lands to be assessed, as well as the apportionment of benefits; and it is well settled that the decisions of such boards on questions within their jurisdiction are not open to collateral attack, and, "if not corrected by some of the modes pointed out by statute, they are conclusive, whatever errors may have been committed in the assessment." *Stanley* v. *Board*, 121 U. S. 535, 7 Sup. Ct. 1234, 30 L. Ed. 1000; *Bauman* v. *Ross*, 167 U. S. 548, 17 Sup. Ct. 966, 42 L. Ed. 270-289; *Railroad Co.* v. *Backus*, 154 U. S. 421, 14 Sup. Ct. 1114, 38 L. Ed. 1031; *Davidson* v. *City of New Orleans*, 96 U. S. 97, 24 L. Ed. 616; *Board* v. *Tregea*, 88 Cal. 334, 26 Pac. Rep. 237; *Irrigation Dist.* v. *Bradley*, 164 U. S. 167, 17 Sup. Ct. 56, 41 L. Ed. 369; In re *Prospect Park & C. I. R. Co.*, 85 N. Y. 489. We find that the jurisdiction of the board to act was established by the filing of a sufficient petition for the construction of the drain. As has been seen, the hearing upon assessments provided by the statute meets the requirements of due process of law. Due notice of the hearing was given, and the appellants were thus afforded an opportunity of contesting their assessments before the tribunal created by law to pass upon the same. The jurisdiction of the board being established and there being no claim of fraud, its determination must, therefore, be accepted as conclusive. See *Shuttuck* v. *Smith*, 6 N. D. 56, 69 N. W. Rep. 5, and cases cited.

Neither do we find that charges for unauthorized items were included in the cost of the drain, as alleged by appellants. The items objected to are bridges, attorneys' fees, interest, incidental expenses, publishing notices, clerks' fees, office rent, furniture, printing, books, and supplies. It is patent that a work of the magnitude of this ditch might very properly involve expenditures such as are objected to. It was plainly the intention of the legislature to provide for the allowance and inclusion of all items of expense which would fairly contribute to the establishment, construction, and maintenance of drains, —a course which is absolutely necessary under any practical drain-

age law. Drains cannot be constructed unless funds are provided to pay such expenses as properly enter into their construction, and no other source exists for obtaining funds than assessments of benefits. Section 1466, Rev. Codes, provides that the cost of the drain shall include all the expense of locating and establishing the same, including the cost of the right of way, the drain commissioners' fees, cost of survey, cost of building bridges and culverts, interest on warrants issued or to be issued, amount of the contracts, and "all other expenses." This section is broad enough to include all of the items to which appellants object, and all of which we find contributed to the establishment and construction of the drain, and were, therefore, legitimate charges to be contracted for and allowed by the board in the exercise of a sound and reasonable discretion. Whether the sums allowed in each instance were correct, we need not inquire. They met the approval of the tribunal created by law to pass upon them. The board acted within its jurisdiction in making the allowances, and there is no claim that they acted fraudulently. That the items were proper expenditures cannot be doubted. See *Butler* v. *City of Toledo,* 5 Ohio St. 225. It hardly need be said that the authority of drainage boards is not arbitrary or unlimited, and that landowners and others interested are not remediless against usurpations of jurisdiction. They may invoke the same remedies against attempted usurpations of authority as are available as against other inferior boards acting in excess of their jurisdiction.

It is also claimed that the act under consideration authorizes assessments for benefits arising from the construction of drains which are conjectural or speculative, and that it is, therefore, invalid. No time need be spent on this point. Section 1452, Rev. Codes, which is the governing section, will not admit of any such construction. This section authorizes assessments against lands for benefits to accrue "either directly or indirectly by reason of the construction of such drain, whether such lands are immediately drained thereby, or can be drained only by the construction of other and connecting drains." It requires no argument to show that benefits from the immediate draining of lands are not speculative, and it is well settled that the benefits afforded for draining lands through connecting or lateral drains are special, and not speculative, and will support assessments. "Where the construction of a large drain enables property owners to carry their lateral ditches into it, and thus secure good drainage without encroaching upon the rights of others, there is special benefit." *Lipes* v. *Hand,* 104 Ind. 503.

The conclusion necessarily follows, from what has already been said, from which it appears that the proceedings of the drainage board were under a valid law, and were not invalid for irregularities or for jurisdictional reasons, that the plaintiffs must fail in this action.

Another reason, which lies at the very foundation of the relief sought, compels the same conclusion. The plaintiffs have united their interests in one complaint, and are seeking the aid of a court of

equity to defeat the collection of assessments imposed upon their lands, and to have the entire proceedings of the drainage board declared void, and of no effect. The facts of this case are such as to require a denial of this relief on purely equitable grounds. It appears that 27 of the plaintiffs signed the petition which induced the location and construction of the drain. Five of them executed conveyances of the right of way for the drain, and were paid therefor. Two of them had a contract for constructing one-half mile of it. The drain is 10 miles in length, and its construction necessarily covered a considerable period of time, and, as we have seen, involved the expenditure of large sums of money and the contracting of many obligations. The period of time covered and the character of the work being done makes it necessary to assume that the plaintiffs whose lands are adjacent to the ditch were fully cognizant of all these facts. No steps of any kind were taken by any of the plaintiffs to arrest the progress of the work, or to challenge its legality in court, by notice to the board or to contractors, or otherwise. This action was not instituted until the drain had been fully completed, and after all of the benefits accruing therefrom had been conferred. Under such circumstances a court of equity will not stop to inquire into questions of regularity or irregularity. The cases are numerous, and the courts unanimous, we believe, in denying equitable relief on facts such as are here presented. In *Kellogg* v. *Ely,* 15 Ohio St. 64, which was an action to restrain drainage assessments on the ground that the proceedings were irregular and ilegal, the court said: "We do not find it necessary to determine any one of the many questions made and argued by counsel in the case as to the legality or illegality of the proceedings by which this ditch was established, because, if we take for granted all that plaintiff's appeal claims in this respect, we are of opinion that he does not make such a case as to entitle him to a remedy by injunction at the hands of a court of equity. It is not for every threatened violation of the legal rights of a party that a court of equity will interpose with its preventive remedy by injunction, even in a case where that remedy would be efficient. A party appealing to a court of equity must make a case which can commend itself to the conscience of the court. * * * It does not appear from the record that he ever warned the contractors or laborers that he intended for himself to resist the collection of the assessment which must follow to raise the money to pay them, but, remaining inactive and silent until his swamp lands were drained by a ditch of nearly a mile in length, he then for the first time asks the interposition of a court of equity. We think he comes too late,"—citing *Wiggin* v. *Mayor,* etc., 9 Paige, 24, In *Patterson* v. *Baumer,* 43 Iowa, 477, the court said: "While the work of constructing the ditch was undertaken because demanded by the public interests, yet the petitioners, being landowners in the vicinity of the improvement, were interested therein. They must all be presumed to have had notice of the action of the county in ordering the work and in causing it to be prosecuted. Some of them signed the petition to the supervisors.

asking that the work be done. They cannot be presumed to have been ignorant of any irregularities up to and including the letting of the contract. They should have objected thereto before the expenditure of money and labor by the county and contractor. The law will not permit them to remain silent until after the work is done, and then raise such objections to defeat the collection of taxes,"—citing *Kellogg* v. *Ely*, 15 Ohio St. 64; *Weber* v. *City of San Francisco*, 1 Cal. 455; *Motz* v. *City of Detroit*, 18 Mich. 495; *City of Evansville* v. *Pfisterer*, 34 Ind. 36, 7 Am. Rep. 214; *City of Lafayette* v. *Fowler*, Id. 140; *Sleeper* v. *Bullen*, 6 Kan. 300. In *McCoy* v. *Able*, 131 Ind. 417, 30 N. E. Rep. 528, 31 N. E. Rep. 453, it is said: "Principle and authority forbid that property owners should be allowed to stand by inactive and passive until after the work has been done, and then come in and take from the contractor the value of his work and materials without compensation. For such persons the law has no very tender regard." In *Prezinger* v. *Harness*, 114 Ind., 491, 16 N. E. Rep. 495, the same court said: "The authorities fully justify the statement that, where an improvement is made under color of statutory proceedings, unless such proceedings be so totally and palpably void that the person who made the improvement or performed the work must have proceeded with a degree of recklessness that amounted to bad faith, the property owner who stood by and received the benefits assessed against his property will be estopped to assert the invalidity of the proceedings without first paying or offering to pay the benefits." Again, in *Board* v. *Plotner* (Ind. Sup.) 48 N. E. 635, the same court said: "It is a general rule, now fully accepted in this state, that, where an owner of property subject to assessment for public improvements stands by and makes no objection to such improvements which benefit his property, he may not deny the authority by which the improvements are made, or defeat the assessment made against his property for the benefits derived; and this is true both where the proceedings for the improvement so had are irregular and where their validity is denied, but color of law exists for the proceedings,"—citing a long list of authorities. In *Motz* v. *City of Detroit*, 18 Mich. 495,—which is a case where several taxpayers who had petitioned to have a street paved, and then sought to enjoin the assessment of their property,—it was held that their failure to complain or object to the contractors must be taken to show assent to the proceedings which led to the assessment; that, whether such assessment was legal or not, the facts furnished no ground for the interposition of a court of equity to restrain the assessment by injunction. Cooley, J., who wrote the opinion, said: "Under these circumstances they must be taken to have been willing and actively consenting parties to all the proceedings which led to the assessment, and to have impliedly, at least, consented that such assessment should be made. Whether, therefore, the assessment is legally void or not, there is not the least ground on their part for claiming the interposition of a court of equity by its extraordinary process of injunction to stay the collection of the assessment. Their remedy, if any, is

strictly legal." The cases also hold that, where one has received benefits under an unconstitutional law, a court of equity will not aid him to escape payment by reason thereof, and this upon the ground that he is estopped by the receipt of the benefits from denying its constitutionality. See *Vickery* v. *Blair* (Ind. Sup.) 32 N. E. Rep. 881, and cases cited. On the general doctrine that a person who passively allows the work of constructing a drain to proceed with full knowledge that he is to be assessed therefor, and that compensation for the work can be provided in no other way than by assesment for benefits, is estopped from restraining the collection of the assessment, see the following cases: *Atwell* v. *Barnes* (Mich.) 66 N. W. Rep. 583; *Hall* v. *Slaybaugh* (Mich.) 37 N. W. Rep. 545; *People* v. *Drain Com'rs of Wayne Co.,* 40 Mich. 745; *Commisioners* v. *Krauss* (Ohio) 42 N. E. Rep. 831; *Byram* v. *City of Detroit,* 50 Mich. 56, 12 N. W. Rep. 912, 14 N. W. Rep. 698; *Lundbom* v. *City of Manistee,* 93 Mich. 170, 53 N. W. Rep. 161; *Goodwillie* v. *City of Detroit,* 103 Mich. 283, 61 N. W. Rep. 526; *Gillett* v. *McLaughlin* (Mich.) 37 N. W. Rep. 551; *City of Burlington* v. *Gilbert,* 31 Iowa, 356, 7 Am. Rep. 143. In considering a case resting upon a state of facts similar to those in the case at bar, the supreme court of Michigan, in *Smith* v. *Carlow,* 72 N. W. Rep. 22, said: "This drain is now constructed. All parties to the proceeding acted in good faith. There is no evidence of fraud. The entire proceedings were open and notorious, and evidently were known to most, if not all, whose lands were affected. The courts were open to them to contest its validity before the contractors had performed the work under their contract. The commissioners decided that it was a public necessity. Whatever advantage it is to the pubilc has been reaped. It is just that the contractors be paid, and courts should compel payment unless some insurmountable obstacle stands in the way. We think this case comes clearly within many other decisions of this court which hold that, when parties stand by and see such improvements made, and take no steps to impeach their validity, they are estopped to raise their validity when called upon to pay for them." In *City of Seattle* v. *Hill* (Wash.) 62 Pac. Rep. 446, in which certain taxpayers sought to restrain the collection of assesments levied for street improvements, the court said: "We are constrained to hold that, after a person has signed a petition for an improvement, which can only be paid for by means of an assessment on contiguous property, he is estopped from contesting the validity of the assessment; especially after the work has been completed, and accepted by the proper authorities. Cooley, Tax'n, p. 819; *Ball* v. *City of Tacoma,* 9 Wash. 592, 38 Pac. Rep. 133; *Motz* v. *City of Detroit,* 18 Mich. 495; *Wood* v. *Norwood Tp.,* 52 Mich. 32, 17 N. W. Rep. 229; *Ricketts* v. *Spraker,* 77 Ind. 371; *Patterson* v. *Baumer,* 43 Iowa, 477; *Ferson's Appeal,* 96 Pa. 140; Elliott, Roads & S. 423." In the recent case of *Conde* v. *City of Schenectady* (N. Y.) 58 N. E. Rep. 130, it was held that a petitioner for a street improvement was estopped from asserting that the statute under which the improvement was made was un-

constitutional. The court said: "The plaintiff was one of the petitioners for the improvement. The only power the city had in the premises was to do the work at the cost of the abutting owners, to be apportioned among them according to frontage. He necessarily asked that the work be done under that statutory rule, and thereby waived any question as to its constitutionality. A party may waive the benefit of a constitutional provision in his favor. *Vose* v. *Cockcroft,* 44 N. Y. 415." We are of opinion, therefore, that, under the general doctrine that persons who petition for the construction of a public improvement to be paid for by assessments, and stand silently by and permit the work to proceed and money to be expended without objection, will not be heard to allege the invalidity of the proceedings in a court of equity for the purpose of defeating the assessments,—and it is a just doctrine,—the plaintiffs in this case are not entitled to the relief sought.

One further question remains for consideration. The trial court directed that the sum of $750 be taxed as an additional attorney's fee against the plaintiffs and appellants. Counsel for appellants claims that this allowance was made without authority of law. It is not contended that the amount allowed was unreasonable. The sole contention is that chapter 25 of the Laws of 1901, which affords the only legal authority for making such an allowance, is unconstitutional. Two grounds are urged against its validity. One only need be considered. It is urged that the subject of the act authorizing the taxation of additional attorneys' fees against plaintiffs in such cases is not expressed in its title. The title of the act is as follows: "An act to provide for the allowance and taxation of costs and additional attorneys' fees against the defendants in actions to enjoin drainage proceedings, or the levy and collection of taxes and assessments therefor." The body of the act contains no reference whatever to the taxation of additional attorneys' fees against defendants. On the contrary, it provides only for the allowance of additional attorneys' fees against plaintiffs, and that is its entire scope; whereas the title of the act expressly limits it to the taxation against defendants. It will thus be observed that the subject of legislation contained in the body of the act, which is the allowance and taxation of attorneys' fees against plaintiffs, is not expressed in the title of the act. The act is therefore clearly within the inhibition of section 61 of the state constitution, which requires that no bill shall embrace more than one subject, which shall be expressed in its title, and it must, therefore, fall. It has been repeatedly held by this court that the requirement that the subject of an act shall be expressed in its title is mandatory. See cases cited supra. Counsel for respondents do not contend otherwise. Their contention is that "the use of the word 'defendants' in the title of the act, instead of 'plaintiffs,' was plainly the result of inadvertence, and such errors are always disregarded." It does not admit of doubt that in construing statutes courts will disregard obvious errors, when the legislative intent is certain. We know of no case, however, in a state having constitutional provisions

like our own, where errors in titles have been established as such and corrected solely by reference to the contents and language of the act itself. In *State* v. *Lake City,* 25 Minn. 404, it was held that the use of the words "Village of Lake City" in the title of an act, instead of the words "Town of Lake City," was an inadvertence which the court would correct. The decision is based, however, upon the sole ground that the error in the title was apparent from facts of which the court could take judicial cognizance, namely, of the political and municipal subdivisions of the state, and upon the further ground that by reason of certain facts narrated in the opinion, which were said to be of general common knowledge, no one, either within or without the legislature, could have been misled in regard to the purpose of the legislation as thus indicated by its title. In *State* v. *McCracken,* 42 Tex. 383, an error in the title was held harmless, and was corrected. The act was entitled, "An act to amend an act entitled 'An act to adopt and establish a penal code for the state of Texas, approved August 26th, A. D. 1871.'" Texas never had but one Penal Code, and that was approved on the 26th of August, 1856. Of this fact the court took judicial notice, and sustained the act upon the ground that the mistake "would be known as a mistake or misprint, and therefore no one could be misled by it to his prejudice." In *People* v. *Supervisors of Onondaga Tp.,* 16 Mich. 254, a majority of the court sustained an act wherein the words "county tax" were erroneously substituted for the words "bounty tax" in the title when the bill was submitted to and signed by the governor. The conclusion of the majority of the court was based upon the ground that there was no error in the title when it was submitted to and passed by the legislature, and that they therefore could not have been misled. To this conclusion, however, Cooley, J., did not agree, and in a separate opinion said: "I am not prepared to say that an act of the legislature can be valid which, as engrossed for the signature of the governor, would be void if passed by the legislature in that form. A law must have the concurrence of the three branches of the legislative department; and if it differs in an essential particular, when presented to the governor for his signature, from the bill passed by the two houses, there is difficulty in saying that it has been concurred in by all. *Prescott* v. *Board,* 19 Ill. 324. And under our constitution the title is not only important, but it is absolutely made to control; so that I do not see how any important change in the title can be said to be immaterial." Section 61 of our constitution makes the title of paramount importance. Its function is to indicate to the public and the legislature the subject of legislation contained in the act. As has been seen, errors in titles are not necessarily always fatal. When they are obvious from an inspection of the title, or when an inadvertence is apparent from facts which courts and the public are bound to know, and it is apparent that the error could not have misled either the legislature or the public, and the true intent is certain,

the error will be disregarded. But we cannot concede that words or language appearing in titles can be established as inadvertently used, and corrected as such, solely by reference to the contents of the act. Such a doctrine would utterly destroy the safeguards afforded by the requirement that the subject of legislation shall be expressed in the title, and thus make the act, instead of the title, controlling as to the subject of legislation. There are no facts of which we can take judicial notice, neither are there any reasons suggested by an inspection of this title which disclose that the word "defendants" was inserted in the title inadvertently. The title, as it reads, clearly expresses a subject of legislation. The subject of legislation embodied in the act is an entirely different one, and is not expressed in the title. The error in the use of the word "defendants," if error it was, appeared in the bill as originally introduced, and was perpetuated through its passage and final approval. Under these circumstances we have no reason for saying, and cannot say, that no one within or without the legislature was misled by the error in the title. It follows, therefore, that the allowance of the additional attorneys' fees in the sum of $750 in the taxation of costs was without authority of law, and the same will be stricken from the judgment.

This is a case where the awarding of costs rests in the discretion of this court. As we have seen, the respondents have prevailed upon all of the issues tendered in the action. The error in the allowance of the additional attorneys' fees, which is the only point upon which the appellants prevail, is a subsidiary question, and appellants have prevailed as to it purely upon technical grounds. The costs incurred in presenting that question are insignificant as compared with the questions involved upon which the appellants fail. The entire portion of the appellants' printed abstract and brief on the matter of the attorneys' fees covers but 15 of the 300 printed pages, and no more extensive record than is embraced in these 15 pages would have been required to present that question had the appeal from the judgment been taken for that purpose alone. Taking all these facts into consideration we are constrained to hold that the respondents should recover their costs and disbursements in this court, and it is so ordered.

As above modified, the judgment of the district court will be in all things affirmed. All concur.