# Ferson's Appeal.

1. When the frontage rule of valuation for the cost of a street improvement is unconstitutional.

2. Where one signs a petition praying for the ordinance authorizing the improvement of a street, and in that ordinance is appointed one of the officers to hold an election for commissioners, and it was partly at his solicitation that the city assumed the payment of the bonds used in making the improvement, he is clearly estopped from defending against the validity of the mode of assessment on his interest in a property affected by the ordinance.

3. Where one of two tenants in common is thus estopped the other tenant who had no share in his acts is not thereby estopped from defending against an assessment upon his interest in the property.

4. Seely v. Pittsburgh, 1 Norris 360, and Bidwell v. Pittsburgh, 4 Id. 412, followed.

November 3d 1880. Before SHARSWOOD, C. J., MERCUR, GORDON, TRUNKEY and STERRETT, JJ. PAXSON and GREEN, JJ., absent.

Appeal from the Court of Common Pleas, No. 1, of *Allegheny county :* Of October and November Term 1880, No. 48.

Appeal of Oliver Ferson from the decree of the court distributing the proceeds of a sheriff's sale.

The return of the sheriff showed that the property was sold on a judgment entered on a mortgage given by Oliver Ferson and John W. Johnston, on said property to Mary A. Corbis for the balance of the purchase-money; that it was sold to H. W. Fulton, for whose use the judgment was marked, for the sum of $6030, the mortgage being the first lien against the interests of both owners. The sheriff took from Fulton, the purchaser and owner of the judgment, his receipt for the amount of it, to wit, the sum of $3725.33, and received in cash $2304.97, which sum was in his hands for distribution.

Exceptions were filed by John Burk and Oliver Ferson. Those filed by John Burk were to the distribution by the sheriff of a part of the fund; to the claims filed by the city of Pittsburgh against the defendants, and those by Ferson were, first, to the distribution to said city claims, and second, to judgment of Nancy Johnston against John W. Johnston, and assigned to John Burk et al.

An auditor, Lewis McMullen, Esq., was appointed to distribute the fund, who reported as follows :

"The property described in the writ, and sold by the sheriff, from which the funds in his hands for distribution were realized, is what is denominated rural property, and situate in a rural district, on the northwest corner of two public and general thoroughfares, namely, Penn and Hiland avenues. It was purchased by John W. Johnston, now deceased, and Oliver Ferson, in the early part of 1872, as tenants in common, each taking an undivided one-half interest therein. They paid a part of the purchase-money down,

and took the deed in their joint names, giving their mortgage for the balance of the purchase money. On this mortgage the premises were sold.

"The fund, therefore, should be distributed after the payment of the Corbis mortgage and the taxes, as follows: one-half to the lien-creditors of Nancy Johnston, and the other half to the lien-creditors of Oliver Ferson. * * *' The only remaining question, then, to be considered, is the right of the city of Pittsburgh to payment of the municipal liens filed for the improvement of Penn and Hiland avenues, against the property of Ferson and Johnston sold by the sheriff in these proceedings out of this fund. The claim for the improvement of Penn avenue, as filed with the sheriff (per paper attached to the record of special return), is for the sum of $298.35, and is for the 3d, 4th, 5th and 6th instalments of the whole assessment. As before stated, Penn avenue is a general thoroughfare, running through a rural district. This property is rural property, situate on said avenue, and is within a very few yards of the property of C. B. Seely, from which the city of Pittsburgh attempted to collect a portion of its lien filed against it for the improvement of Penn avenue, in which case the Supreme Court held that the foot frontage mode of assessment on that portion of said avenue was illegal and invalid: Seely v. Pittsburgh, 1 Norris 360. The assessment in this case is made under the same rule as that in the Seely case. There is no evidence offered to show any word or act on the part of either Johnston or Ferson that indicates any effort on their part to procure the street improvement, or that they had consented that the same should be done. This case is therefore clearly within the principle ruled in Seely v. Pittsburgh, and the city is not on this claim entitled to recover.

"On the 31st day of March 1873, a petition was presented to the councils of the city of Pittsburgh, signed by numerous property-owners along Hiland avenue, among whom was Oliver Ferson, praying for the passage of an ordinance by said councils, granting them the privilege of grading, paving and curbing Hiland avenue, from Penn avenue to the Pittsburgh Waterworks property, under the provisions of the Penn avenue act. On April 14th 1873, said councils passed an ordinance for that purpose, and appointed Oliver Ferson one of the officers to hold an election for commissioners. John W. Johnston did not sign this petition, nor is there any evidence that he took any part in the matter whatsoever. Under this ordinance Hiland avenue was improved, and the cost assessed on the property abutting on it, under the foot frontage rule of valuation. Hiland avenue is a general thoroughfare, between one and two miles in length, running through a rural district, and connects with Stanton avenue, which in turn connects with Butler street. Butler street runs through that part of the city lying along the Allegheny river, from Penn avenue to the Sharpsburgh bridge.

Thus Hiland avenue, by way of Stanton avenue, is a general thoroughfare, connecting that part of the city through which Butler street runs with the east end of the city. The property described in the writ in this case, and sold by the sheriff, as before stated, is situate on the corner of Penn avenue and Hiland, fronting forty-seven and one-half feet on Penn, and extending back along Hiland avenue one hundred and forty-five feet. In the immediate vicinity there is a great deal of farm land. The property abutting on the avenue is used principally for residences. That portion of the avenue in or next East Liberty is more compactly built up than other portions are, many of the residences on these other portions being built on large lots. Again, on other parts of the avenue, there is a great deal of unoccupied land and land planted in orchards, and used generally for farming and gardening purposes. So that, although it is all rural land, yet it is not all of like kind and character, and cannot be said to be all benefited over and above the public advantage conferred by the improvement, therefore, not within the principle decided in the Appeal of the Diamond National Bank of Pittsburgh, reported in the Pittsburgh Legal Journal of November 12th 1879, but ruled by Seely *v.* Pittsburgh, *supra.* The lien filed by the city for the improvement of Hiland avenue at No. 74, October Term 1876, is on the whole property, and the claim made in this distribution is for the sum of $1235.48, being the first, second and third instalments on said lien. John W. Johnston, not having signed the petition praying for the ordinance to make the improvement, nor in any manner whatsoever influenced the city in the matter, he is not estopped from defending against the assessment on his property, or rather interest in the property, as being illegal and invalid, nor are those who take title under him. This case, then, as far as Johnston's interest is concerned, being ruled by Seely *v.* Pittsburgh, *supra*, the city is not entitled to recover therefrom the assessment against it for the improvement of the avenue. The title to his interest, by virtue of the Orphans' Court sale, having vested in Nancy Johnston, on September 28th 1878, and judgments having been entered of record against her between that date and the date of the sale by the sheriff, the one-half of this fund, after payment of joint liens, should be distributed to her lien-creditors. But it is different in regard to the interest of Oliver Ferson. He signed the petition praying for the ordinance authorizing the improvement, and in that ordinance was appointed one of the officers to hold an election for commissioners. It was partially upon his solicitation that the city assumed the payment of the bonds used in making the improvement. Under the principle ruled in the case of Bidwell *v.* City of Pittsburgh, 4 Norris 412, Ferson is clearly estopped from defending against the validity of the mode of assessment on his interest in the property provided in the act. But Ferson could only pledge his own interest in the

property for the cost of the improvement, not Johnston's. Certainly the city did not file its lien against Johnston's interest, because Ferson signed the petition praying for the passage of the ordinance authorizing the improvement, any more than it filed liens on other property abutting on the avenue, owned by persons who did not sign the petition. The liens filed against the property of persons by the city who did not sign the said petition, or in any way solicit the improvement, were filed under the power given the city in the act under the provisions of which the improvement was made, to enter the cost thereof as a lien against the property abutting on the said avenue of the minority of owners who did not sign the petition asking for the improvement, as well as against that of the majority who did, according to the mode prescribed in the act for making the assessment.

" True, there had been no partition made of this property between Johnston or his heirs or assigns and Ferson. Yet their interests were fixed and certain, and, as far as selling, mortgaging. or in any way encumbering, was under their separate control. Why, then, should Ferson's interest in the property be liable for the assessment on Johnston's interest? The same rule that would make Ferson's interest liable for the assessment on Johnston's interest would make it liable for the assessment on any other piece of property abutting on the avenue, the owner of which did not sign the petition for the improvement. The lien was filed against the whole property, and the sum claimed out of this fund for the first, second and third intalments of said lien is $1235.48. Then Ferson and Johnston, having equal interests, should share equally the amount of the lien. The fact that the lien is void as against Johnston's interest does not increase the portion Ferson's interest should pay, to wit, the one-half, or the sum of $617.74. Following, then, the foregoing conclusions, the first exception filed by both John Burk and Oliver Ferson, in so far as the appropriation of the sum of $617.74 to the municipal lien at No. 74, October.Term 1876, for the grading, paving and curbing of Hiland avenue out of the share of this fund (after the payment of the Corbis mortgage and the costs and taxes) belonging to Oliver Ferson is overruled. Otherwise the said exception is sustained."

Oliver Ferson excepted to this report on these grounds: 1. The auditor erred in finding that Oliver Ferson is estopped from defending against the claims of the city of Pittsburgh for the improvement of Hiland avenue. 2. The auditor should have appropriated to the mortgage of Oliver Ferson to Oliver Ferson, executor, one-half the balance in hands of the sheriff, after deducting amounts appropriated to Fulton mortgage, costs, taxes and expenses of auditing, it appearing by the record that no lien was ever filed against Ferson.

The court overruled these exceptions whence this appeal.

[Ferson's Appeal.]

*J. McF. Carpenter*, for appellant.—The gross injustice of com-
pelling a long narrow strip of land, less than fifty feet in width
or depth, to pay the full rate of assessment on a lot one hundred
and twenty feet in depth, is apparent.    It seems equally clear that
an owner of land petitioning for the improvement of a street on the
faith of the constitutionality of a law which provides that all pro-
perty-owners on the street shall bear the expense of such improve-
ment, should have some relief when the Supreme Court has declared
the law unconstitutional.  If the distribution ordered by the auditor
be sustained, Ferson pays his own debt, and then must help pay the
debt of his neighbor.    It is not pretended that Ferson derives any
benefit from the improvement over and above the  benefits accruing
to his neighbors and the city in general, and yet an undivided
interest in a long strip of ground, forty-seven and one-half feet
in width, must pay the assessment which would be made against a
lot almost three times its width.

*Thomas S. Bigelow*, contra.—This is a proceeding in rem against
the property and the lien is against the property not against John-
ston or Ferson.    Ferson signed the petition for the improvement
and acted as an officer at election of commissioners and is therefore
estopped from defending against the city's claim.

The judgment of the Supreme Court was entered November 18th
1880,
PER CURIAM.—We affirm this decree upon the facts and opinion
of the learned auditor in the court below.

> Decree affirmed and appeal dismissed at the cost of the
> appellant.