## McLean Coal Co. et al., Appellants, *v.* Pittsburgh Terminal Coal Corporation et al.

Argued October 5, 1937. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Charles F. C. Arensberg,* of *Patterson, Crawford, Arensberg & Dunn,* with him *James M. Graham,* for appellants.

*Sidney J. Watts,* of *Baker & Watts,* and *Ralph M. Carson,* with them *Frederick Shoemaker, William F.*

*Knoell,* of *Shoemaker & Knoell, Alexander J. Barron,* of *Alter, Wright & Barron, Kenneth G. Jackson, Edward O. Tabor, Kenneth M. Bixler, Thorp, Bostwick, Reed & Armstrong,* for appellees.

OPINION BY MR. JUSTICE DREW, November 12, 1937:

The present controversy arises out of the passage of the "Bituminous Coal Conservation Act of 1935" (C. 824, 49 Stat. 991; U.S.C.A. Title 15, Chapter 17, section 801), by the Congress of the United States, and the subsequent declaration of its unconstitionality: *Carter v. Carter Coal Co.,* 298 U. S. 238. The avowed purposes of the act were the stabilization of the bituminous coal mining industry and the promotion of its interstate commerce. In order to effectuate these purposes taxes were to be levied on the value of all coal mined, and certain rebates accorded producers who accepted the code contemplated by the act. Those areas of the United States where soft coal is produced were divided into districts for administrative purposes, various counties in western Pennsylvania comprising "District No. 2." The many parties on both sides of the present bill in equity are producers of bituminous coal in "District No. 2," all of whom accepted the code. Following their respective acceptances, their representatives met and organized and elected members of their group to the "District Board," the governing body of the code members of the district.

The district board was charged with the performance of many duties and functions under the act. It received reports of operations from the members and transmitted them to the National Bituminous Coal Commission; it performed various statistical operations, adopted standards, effected classification of mines, computed costs, prepared schedules of minimum prices, established rules and regulations for the sale and distribution of coal, and in general advised and represented the members of the district in numerous proceedings, legal and otherwise, affecting their interests in the industry.

In order to perform its services the board was required to lease suitable office quarters, purchase furniture, typewriters, addressographs and stationery, and hire various experts, statisticians, lawyers, clerks and stenographers. These activities necessarily involved large expenses and obligations, and in order to provide therefor an assessment was levied on the various members in accordance with their respective productions of coal. The board continued to function, and many members had paid their assessments, in whole or in part, when the act was declared unconstitutional. To wind up the affairs of this unincorporated association formed by the present parties, those members who have paid their assessments in full instituted this suit against those who have paid only in part or not at all. Its purpose is to compel defendants to pay so much of the assessment against them as may be needed to discharge the board's obligations, and to equalize the payments between plaintiffs and defendants, so that all shall have contributed an equal portion of their assessments to the board's expenses. The court below sustained one of defendants' preliminary objections and dismissed the bill for the reason that "the unconstitutionality of the . . . act could create no rights in and constitutes no protection to those who have acted under it." This appeal followed.

We think plaintiffs entitled to the relief sought. Defendants, as well as plaintiffs, voluntarily entered into the association known as "District No. 2," and they all participated in the election of members of the board. The board members were their agents to govern the district and represent the subscribing producers. To that end they were authorized to incur obligations for the benefit of the members. In these benefits all shared and acquiesced. The mere fact that the occasion for the organization and existence of the association was an unconstitutional statute is immaterial. All the members must bear their just share of the association's obliga-

tions. The unconstitutionality of a statute is a defense to an action only when the liability is created by the statute in question; the invalidity of an act is of no avail when the liability arises from acts indicating the assumption of liability by parties who may, it is true, be acting only because the statute was passed, but who are, nevertheless, voluntarily assuming a relationship which creates a liability: Cf. *Shepard v. Barron,* 194 U. S. 553; *Bidwell v. City of Pittsburgh,* 85 Pa. 412; *Dewhurt v. City of Allegheny,* 95 Pa. 437; *Ferson's Appeal,* 96 Pa. 140; *Clear Springs Water Co. v. Catasauqua Borough,* 231 Pa. 290; *Ebensburg Borough v. Little,* 28 Pa. Super. Ct. 469; see *Kappel v. Meth,* 125 Pa. Super. Ct. 443.

The affairs of an association such as the present district board are properly wound up and settled in equity: see *Appeal of Christy,* 92 Pa. 157; *Ash v. Guie,* 97 Pa. 493; Pomeroy, Equity Jurisprudence (4th ed.), section 2338.

Decree reversed and record remitted for further proceedings consistent with this opinion; costs to abide the final result.