Williams, J.
 

 This suit was brought in the Court of Common Pleas of Hocking county, Ohio, by the plaintiff, Bituminous Coal Producers Board for District No. 4, against the defendant, Starr-Jaekson Mining Company, to collect assessments under the Bituminous Coal Conservation Act of 1935, Title 15, Chapter 17, Section 801
 
 et seq.,
 
 U. S. Code, 49 Stats, at L., 991, effective August 30, 1935 (repealed April 26, 1937), after the labor provisions thereof had been held unconstitutional and the price fixing provisions invalid because inseparable therefrom.
 
 Carter
 
 v.
 
 Carter Coal
 
 
 *430
 

 Co.,
 
 298 U. S., 238, 80 L. Ed., 1160, 56 S. Ct., 855, decided May 18, 1936.
 

 The defendant demurred to plaintiff’s petition upon two grounds, (1) that the facts stated therein are not sufficient to constitute a cause of action, and (2) that the plaintiff did not have legal capacity to sue. The Common Pleas Court sustained the demurrer and entered ¡judgment for the defendant. The Court of Appeals affirmed the judgment and the questions raised by the demurrer are here for determination.
 

 It appears from the petition (filed April 21, 1937) that on October 30, 1935, the defendant filed a written acceptance of the code promulgated (October 9, 1935) under the act, thereby agreeing to become a code member and be subject to the provisions of the act, the code and the regulations and orders of the commission and its agent, the plaintiff herein; that the plaintiff board was elected and organized under the provision’s of the act and thereafter fully performed all that was required of it by the act, the code and the acceptance of the defendant; that the defendant received benefits gained from plaintiff’s services and the administration of the code; that plaintiff, in its operations, contracted certain indebtedness in administering the code; and that to meet the expense of administration the plaintiff board levied two assessments of $198.08 and $282.02 respectively and gave notice of the initial assessment to the defendant on November 27, 1935, and of the second assessment on March 26, 1936.
 

 In a general sense the authority for the imposition and collection of assessments is found in Section 4, Part I, (b) of the act, which provides: “The expense of administering the code by the respective district boards shall be borne by those subject to the jurisdiction of such boards, respectively, each paying his proportionate share, as assessed, computed on a tonnage basis, in accordance with regulations prescribed by such boards with the approval of the commission. Such
 
 *431
 
 assessments may be collected by tbe district board by action in any court of competent jurisdiction.”
 

 Defendant contends tbat tbe petition does not state facts sufficient to constitute a cause of action and grounds its contention on tbe
 
 Carter case, supra,
 
 and especially on tbat part of tbe opinion wbicb asserts tbat tbe written acceptance of tbe code, having been executed under compulsion in compliance with Section 3 of the act, did not constitute an agreement.
 

 Section 3 imposes upon tbe sale or disposal of bituminous coal an excise tax of 15 per cent on tbe sale price at tbe mine, or in tbe case of captive coal (coal produced for tbe sole use of tbe producer) tbe fair market value at tbe mine, and further provides tbat any coal producer who has filed bis acceptance of tbe code provided for in Section 4 of tbe act and complies with tbe provisions of tbe code shall be entitled to a drawback of 90 per cent of tbe amount of the tax.
 

 In tbe
 
 Carter case, supra,
 
 at page 288, the Supreme Court of tbe United States in tbe course of tbe opinion say: “Tbe so-called excise tax of 15
 
 per centum
 
 on tbe sale price of coal at tbe mine, or, in tbe case of captive coal tbe fair market value, with its drawback allowance of 13% per cent, is clearly not a tax but a penalty. Tbe exaction applies to all bituminous coal produced, whether it be sold, transported or consumed in interstate commerce, or transactions in respect of it be confined wholly to tbe limits of tbe state. It also applies to ‘captive coal’ — that is to say, coal produced for tbe sole use of tbe producer.
 

 “It is very clear tbat tbe ‘excise tax’ is not imposed for revenue but exacted as a penalty to compel compliance with tbe regulatory provisions of tbe act. Tbe whole purpose of tbe exaction is to coerce what is called an agreement — wbicb, of course, it is not, for it lacks tbe essential element of consent. One who does a thing in order to avoid a monetary penalty does not
 
 *432
 
 agree; he yields to compulsion precisely the same as though he did so to avoid a term in jail.”
 

 The defendant seizes upon this language as a basis for the claim that its written acceptance was signed under compulsion and, being involuntary, is invalid.
 

 Of course it is not enough to relieve defendant from legal liability to say that its acceptance was invalid by reason of constitutional inhibitions. Liability incurred under administration of an unconstitutional act previous to the time it was adjudged invalid has been enforced against those whose active participation has given rise to the obligations.
 
 State, ex rel. City of Columbus,
 
 v.
 
 Mitchell et al., Commrs.,
 
 31 Ohio St., 592, 610;
 
 Tone
 
 v.
 
 Columbus,
 
 39 Ohio St., 281, 48 Am. Rep., 438;
 
 Mott
 
 v.
 
 Hubbard, Treas.,
 
 59 Ohio St., 199, 53 N. E., 47;
 
 City of Findlay
 
 v.
 
 Pendleton and Whitely,
 
 62 Ohio St., 80, 88, 56 N. E., 649;
 
 State, ex rel. Cline, Pros. Atty.,
 
 v.
 
 Vail,
 
 84 Ohio St., 399, 95 N. E., 911;
 
 Daniels
 
 v.
 
 Tearney,
 
 102 U. S., 415, 26 L. Ed., 187. One who voluntarily participates in transactions authorized by a statute, afterwards held unconstitutional, and causes indebtedness to be contracted for his benefit, is by reason of good faith estopped from asserting the unconstitutionality of the enactment as a defense in an appropriate action brought against him to satisfy such indebtedness.
 

 Heed must be paid, however, to the qualification that the participant is not liable unless his participation was voluntary. "What the learned justice said in the
 
 Carter case
 
 regarding the written acceptances being secured under compulsion was said argumentatively with reference to the constitutional question involved. The enforceability of a written acceptance was not under determination in that case. If the statute had been held valid and constitutional in every respect, no one would maintain that the written acceptance executed thereunder was obtained under compulsion or duress; in that event the acceptance would neces
 
 *433
 
 sarily have been valid. It follows that the acceptance of the defendant was invalid, not because it was involuntarily entered into, but solely because of the adjudication of unconstitutionality as to the particular provisions in accordance with which it was signed.
 

 The defendant, under the allegations of the petition, was in our judgment a voluntary participant in the transactions which led the board to contract the indebtedness and is estopped from raising the question of unconstitutionality to avoid liability for indebtedness so contracted.
 

 Defendant claims plaintiff had no legal capacity to sue. The defendant insists that when the United States Supreme Court in the
 
 Garter case
 
 struck down as unconstitutional and invalid both the labor and price fixing provisions of the act nothing remained except the provisions creating a Bituminous Coal Commission and the various district boards which constituted the machinery to carry into effect the unconstitutional provisions. The defendant argues that since Congress would not have created a commission and boards to carry into effect unconstitutional legislation the whole act must fall and so the plaintiff board has no legal existence and cannot maintain the action.
 

 The better view seems to be that the board continued to exist after the decision in the
 
 Garter case,
 
 at least for the purpose of winding up its affairs, just as the commission could continue to function as a fact-finding body. Yet if the whole should be deemed unconstitutional, there are still reasons why plaintiff must prevail on this contention. It has been explained why the petition is not subject to a general demurrer by reason of the unconstitutionality and invalidity of the labor and price fixing provisions; by parity of reasoning that pleading is not subject to a special demurrer on the ground of plaintiff’s lack of legal capacity to sue by reason of the unconstitutionality of the pro
 
 *434
 
 visions creating the board. In each instance the principle of estoppel applies.
 

 In
 
 McLean Coal Co.
 
 v.
 
 Pittsburgh Terminal Coal Corp.,
 
 328 Pa., 250, 195 A., 4, the action was brought in equity by members who had paid the assessments in full against those members who had paid their assessments in part or not at all. It was held the action, which was in the nature of contribution, would lie-.
 

 It does not appear from the petition in the instant case that the full amount of the assessments sued for are not required to meet valid indebtedness. Until it appears from the pleadings that full payment of assessments is not necessary and that equities needing adjustment exist- between producers subject to assessments, equity jurisdiction is not invoked.
 

 In passing it may be stated that the rights of the parties hereto are not affected by the enactment of the Bituminous Coal Act of 1937, which became effective after the commencement of this action in the Court of Common Pleas and contained a clause repealing the Bituminous Coal Act of 1935. The rights of the parties became fixed when the suit was filed.
 

 This court holds that the petition states facts sufficient to constitute a cause of action and that the plaintiff has legal capacity to sue.
 

 For the reasons given the judgments of the courts below are reversed and the cause is remanded to the Court of Common Pleas with instructions to overrule the demurrer and for further proceedings according to law.
 

 Judgments reversed and cause remanded.
 

 Zimmerman, Matthias and Hart, JJ., concur.