AMERICAN MANUFACTURERS MUTUAL INSURANCE COMPANY, AMERICAN PROTECTION INSURANCE COMPANY, FEDERAL KEMPER INSURANCE COMPANY, KEMPER SECURITY INSURANCE COMPANY, LUMBERMENS MUTUAL CASUALTY COMPANY, AMERICAN MOTORISTS INSURANCE COMPANY v. JOHN RANDOLPH INGRAM, COMMISSIONER OF INSURANCE OF THE STATE OF NORTH CAROLINA, THE HEALTH CARE LIABILITY REINSURANCE EXCHANGE: THOMAS GRIFFITH AND CO., INC., AND THOMAS C. HAYS, JR., INDIVIDUALLY AND AS REPRESENTATIVES OF THE NORTH CAROLINA AGENCIES AND AGENTS OF THE PLAINTIFFS IN THIS ACTION; DRS. JULIAN T. SUTTON AND G. VANCE BYRUM, P.A., JULIAN T. SUTTON, M.D., G. VANCE BYRUM, M.D., ANDERSON PAGE HARRIS, M.D., WILLIAM RUSSELL GRIFFIN, JR. AND DONALD GEORGE JOYCE, INC., DONALD GEORGE JOYCE, M.D., WILLIAM RUSSELL GRIFFIN, JR. M.D., FORSYTH SURGICAL ASSOCIATES, P.A., ROBERT L. MEANS, M.D., RILEY M. JORDAN, M.D., WILLIAM W. SUTTON, M.D., DAVID ALLYN SCUDDER, M.D., TERESITA J. FERRER ESTOYE, M.D.

No. 7810SC1083

(Filed 20 November 1979)

1. **Physicians, Surgeons, and Allied Professions § 11; Statutes § 8.1— medical malpractice insurance binders—insurance pursuant to unconstitutional statute —voidness from inception**

 A binder for medical malpractice insurance issued by plaintiff insurers to defendant physicians only because they were required to write such insurance by the Health Care Liability Reinsurance Exchange Act, Ch. 427 of the 1975 Session Laws, was null and void from its inception where defendants had knowledge of a Statement of Intent, Notice of Protest and Reservation of Rights in which plaintiffs stated that they issued the binder under protest and not voluntarily, that the constitutionality of the Act was being tested, and that plaintiffs intended to consider the policy null and void as of the inception date should they have the option to do so by reason of a court decision declaring the Act unconstitutional, and where the Act was subsequently declared unconstitutional by the N.C. Supreme Court, since (1) the binder was issued solely as a result of the compulsion of the unconstitutional statute and not voluntarily by plaintiffs acting under a mistaken assumption as to the validity of the statute, and (2) the decision holding the Health Care Liability Reinsurance Exchange Act unconstitutional should be given retroactive effect.

2. **Physicians, Surgeons, and Allied Professions § 11— insurance binder—Reservation of Rights not void as against public policy**

 A Reservation of Rights attached to a binder for medical malpractice insurance making coverage contingent on the constitutionality of the Health Care Liability Reinsurance Exchange Act was not void as against public policy.

3. **Declaratory Judgments § 4.3— validity of medical malpractice insurance binders—justiciable controversy**

> Plaintiffs were entitled to a declaratory judgment as to the validity of binders for medical malpractice issued pursuant to the Health Care Liability Reinsurance Exchange Act to nonappearing defendants, although no litigation is pending as to such defendants which might subject plaintiffs to liability on the binders, since the possibility of such litigation is neither remote nor speculative.

APPEAL by plaintiffs from *Smith (Donald L.), Judge*. Judgment entered 24 July 1978 in Superior Court, WAKE County. Heard in the Court of Appeals 24 September 1979.

This action was brought under the Declaratory Judgment Act by plaintiffs, an affiliated group of Illinois insurance companies authorized to write general liability insurance in North Carolina, against the North Carolina Commissioner of Insurance, the Health Care Liability Reinsurance Exchange, and others, seeking judgment declaring Ch. 427 of the 1975 Session Laws unconstitutional and adjudging all applications for medical malpractice insurance received and binders issued thereunder null, void, and unenforceable.

In 1975 a number of insurance companies which had traditionally provided malpractice insurance to physicians in North Carolina announced their withdrawal from the market. On 28 May 1975 the General Assembly responded to the impending medical malpractice insurance crisis caused by this withdrawal by enacting Ch. 427 of the 1975 Session Laws (hereinafter referred to as the Act), which was subsequently codified as G.S. § 58-173.34 et seq. The Act specified that its purpose was "to provide a *mandatory* program to assure an adequate supply of health care liability insurance coverages" (emphasis added) in this state. As a prerequisite to further engaging in the writing of any general liability insurance within the State of North Carolina, every insurer was required to be a member of the newly created North Carolina Health Care Liability Reinsurance Exchange and to write health care liability insurance for any and all persons who were eligible risks as defined by the Act. The Act defined an eligible risk as "a person who is a resident of this State who holds a valid license to practice or perform in this State a given health care profession as set forth in the license requirements of the statutory board issuing said license, and hospitals as defined in

G.S. 131-126.1(3), including but not limited to the following categories: physicians, surgeons, dentists, nurses, nurse anesthetists, physiotherapists, medical or X-Ray laboratories, chiropractors, chiropodists, optometrists, osteopaths and blood banks." G.S. 58-173.37(4). Under the Act, plaintiffs, along with all other general liability insurance companies in the state, were required to participate in all losses suffered by the Reinsurance Exchange on a pro-rata basis based upon the amounts of general liability insurance written within the State of North Carolina. The Act provided that "[n]o company may withdraw from membership in the Exchange unless it ceases to write general liability insurance in this State or ceases to be licensed to write such insurance." G.S. 58-173.38(a).

As required by the Act, plaintiffs subscribed to the plan of operation for the Reinsurance Exchange on 21 August 1975. Thereafter, on 24 September 1975 plaintiffs mailed a notice to each of their North Carolina agents and enclosed a document entitled "Statement of Intent, Notice of Protest & Reservation of Rights," which stated as follows:

STATEMENT OF INTENT
NOTICE OF PROTEST AND RESERVATION OF RIGHTS

Any policy or binder of physicians and surgeons professional liability insurance issued by the Kemper Insurance Company identified below, hereinafter referred to as the Company, is issued under the mandate of North Carolina House Bill 74, Chapter 427, Session Laws of 1975, (G.S. 58-173.23 et seq.) [sic] and is issued under protest and not as a voluntary act of the Company.

The validity of this statute is being tested in court. The Company intends to reinsure all eligible physicians and surgeons professional liability insurance policies and binders in the North Carolina Health Care Liability Reinsurance Exchange, an entity created by the statute. The Company does not intend to assume any risk on its own account.

Any coverage under this policy or binder may be contingent upon the statute being valid and the ability of the Reinsurance Exchange to adequately reinsure this policy or binder.

In the event that any court declares, or enters a judgment [sic] the effect of which is to render the provisions of House Bill 74, Chapter 427, Session Laws of 1975 (G.S. 58-173.23 et. seq.) [sic] invalid or unenforceable in whole or in part, or in the event the Reinsurance Exchange is inadequately funded, the Company may have the option to consider this policy as null and void as of the inception date. The Company intends to exercise that option if it is available.

The complaint in this action was filed on 30 September 1975, and at 5:30 p.m. on the same date, a temporary restraining order was issued which restrained the Commissioner of Insurance from enforcing the Act against plaintiffs. However, prior to that time plaintiffs' agents had issued verbal binders for health care liability insurance to 48 physicians and professional associations in North Carolina, and it is the validity of these binders which is the subject of the present appeal. One such binder had been issued on 30 September 1975 by Moore & Johnson Agency of Raleigh to defendant-appellees, Wake Anesthesiology Associates, Inc., and Drs. Haynes, King, and Schick. At that time, defendant-appellees were not yet parties to this action.

On 9 October 1975 this action was consolidated with numerous other actions brought by insurers seeking similar relief, and a preliminary injunction was issued. On 29 October 1975 the court ordered that the claim set forth in plaintiffs' complaint "that all applications received and binders issued under the [Act] are null, void and unenforceable," which claim is the subject of the present appeal, be severed from the other claims and that a separate trial be granted on that claim. On the same date defendant-appellees, Wake Anesthesiology Associates, Inc., and Drs. Haynes, King, and Schick, were joined as additional parties in the action on plaintiffs' severed claim. They were served with summons and copy of the complaint on 31 October 1975.

On 7 November 1975, in the trial in the Superior Court of the consolidated actions challenging the constitutionality of the Act, the Superior Court entered judgment declaring the Act unconstitutional on its face and permanently enjoining the Commissioner of Insurance from proceeding to revoke the licenses of companies failing to comply with the Act. As a result of entry of that judgment, the Health Care Liability Reinsurance Exchange, the entity

created by the Act to serve as the medium through which liability insurers were to cede health care liability insurance risks, ceased to operate from and after 7 November 1975. On appeal to the North Carolina Supreme Court, the judgment of the Superior Court was affirmed. *Indemnity Co. v. Ingram, Com'r of Insurance*, 290 N.C. 457, 226 S.E. 2d 498 (1976).

Trial on the severed claim relating to the validity of the binders which had been issued by plaintiffs' agents prior to plaintiffs' obtaining the temporary restraining order on 30 September 1975 was held before the court without a jury at the 24 April 1978 Session of Superior Court in Wake County. The only defendants who participated in the trial were Wake Anesthesiology Associates, Inc., and its members, Drs. Haynes, King, and Schick. These defendants had been made parties on 6 October 1976 to a civil action which arose out of allegedly negligent acts occurring on 5 October 1975, during the period covered by the binder which had been issued to them by Moore & Johnson Agency on 30 September 1975. Eight other defendants executed formal releases, and plaintiffs agreed to a voluntary dismissal of the action as to them.

In a pretrial order, the parties stipulated to certain facts, including "[T]hat at the time of enactment of the Act, the plaintiffs were writing no health care liability insurance in the State, and had no personnel in the State with expertise regarding said insurance," that "[n]one of the plaintiffs' agents had contractual authority with the plaintiffs to bind or write health care liability insurance," and "[t]hat no premium for health care liability insurance was ever charged by or received by any of the plaintiffs." The court also found as a fact that "[n]o premium for health care liability insurance was ever billed to defendants Wake Anesthesiology Associates, Inc., and Drs. Haynes, King and Schick or received by plaintiffs."

Based on the pleadings, stipulations, interrogatories, depositions and exhibits, the court made detailed findings of fact concerning the matters set forth above and in addition made the following findings of fact as to Wake Anesthesiology Associates, Inc., and Drs. Haynes, King, and Schick:

16. Defendants Wake Anesthesiology Associates, Inc., and Drs. Lawrence B. Haynes, J. LeRoy King and Jafar M.

Schick had been provided medical malpractice coverage by the St. Paul Fire and Marine Insurance Company since 1969. During 1975 they were informed that St. Paul would terminate coverage at 12:01 a.m. October 1, 1975.

17. Harry W. Moore and Moore & Johnson Insurance Agency were independent insurance agents and as such had represented the Kemper Group in Raleigh for approximately ten years.

18. Since 1969 defendants Wake Anesthesiology Associates, Inc., and Drs. Haynes, King and Schick had employed Moore & Johnson Insurance Agency in Raleigh, North Carolina, to provide defendants medical malpractice insurance coverage.

19. When defendants were notified that their coverage with St. Paul would expire at 12:01 a.m. on October 1, 1975, Harry W. Moore undertook to obtain other medical malpractice insurance coverage for them.

20. As agent for the Kemper Group, Harry W. Moore and Moore & Johnson Agency received the Statement of Intent, Notice of Protest and Reservation of Rights which was mailed to all of plaintiffs' agents September 24, 1975. Receipt of the Statement of Intent, Notice of Protest and Reservation of Rights was acknowledged by Earl Johnson, President of Moore & Johnson Agency, by letter to Kemper dated September 29, 1975.

21. On September 30, 1975, the Moore & Johnson Agency verbally bound coverage for Wake Anesthesiology Associates, Inc., and Drs. Haynes, King and Schick for the 30 day period October 1, 1975 to November 1, 1975. The binder was issued on behalf of Lumbermens Mutual Casualty Company.

22. Prior to issuance of the verbal binder, defendants Wake Anesthesiology Associates, Inc., and Drs. Haynes, King and Schick had determined to curtail their practice and limit professional services to emergency cases because of the unavailability of medical malpractice insurance. Upon issuance of the verbal binder, defendants continued to perform

professional services in the usual manner without limitation as to the kinds of cases accepted.

23. A written binder for health care liability insurance coverage was issued by plaintiffs and forwarded by Moore & Johnson Agency to defendants on October 17, 1975. Attached to the written binder was a copy of the Statement of Intent, Notice of Protest and Reservation of Rights in the identical form and language previously issued to each of plaintiffs' agents on September 24, 1975.

24. In a letter delivered with the written binder, Harry W. Moore assured defendants that he had conferred with Russ Cossart, manager of the Commercial Lines Underwriting Department of Lumbermens Mutual on the morning of October 17, 1975 and that Mr. Cossart had informed him that notwithstanding the Statement of Intent, Notice of Protest and Reservation of Rights, Lumbermens Mutual was insuring defendants up to $1,000,000.00.

25. The binding memorandum issued by plaintiffs contained the following provision:

8. This binder shall expire at the end of the binder period shown in item 3 or it shall terminate (1) immediately on notice of cancellation by the named insured or the company or (2) on its effective date if replaced by a policy as stated herein.

26. On October 17, 1975, Harry W. Moore wrote Russ Cossart, Manager of Lumbermens Mutual Commercial Lines Underwriting Department and requested confirmation of defendants' coverage and clarification of the Statement of Intent attached to the written binders. On October 30, 1975, Russ Cossart wrote Harry W. Moore a response to his letter of October 17, and stated that while the insurance industry and Lumbermens Mutual were in a state of confusion about the future of health care liability insurance, "I think we have to agree that the company is offering binders for malpractice coverage which means that we are the carrier at this point."

27. On October 6, 1976, defendants, Wake Anesthesiology Associates, Inc., and Drs. Haynes, King and Schick were made parties defendant in a civil action which allegedly arose

out of negligent acts committed on October 5, 1975, during the period of time covered by the binder, the validity of which is contested in this proceeding. Plaintiffs are participating in defense of this suit.

28. Plaintiffs have never given defendants any notice of cancellation of their coverage except such notice as resulted from service on October 31, 1975, of an Order dated October 29, 1975, joining defendants as additional defendants in the action filed by plaintiffs on September 30, 1975.

Based on its findings of fact, the court made the following

CONCLUSIONS OF LAW

1. Harry W. Moore, in his capacity as an independent insurance agent in Raleigh, North Carolina, was an agent both for the plaintiffs herein and for defendants, Wake Anesthesiology Associates, Inc., and Drs. Haynes, King and Schick.

2. Russ Cossart was an agent for the plaintiffs herein.

3. Harry W. Moore had apparent authority to alter the terms of the Statement of Intent, Notice of Protest and Reservation of Rights but neither Harry W. Moore nor any other employee of Moore & Johnson Insurance Agency effectively altered the terms of such Statement of Intent.

4. Russ Cossart had apparent authority to alter the terms of the Statement of Intent, Notice of Protest and Reservation of Rights, but he did not effectively alter such terms.

5. There is an actual presently existing controversy between the plaintiffs and defendants, Wake Anesthesiology Associates, Inc., and Drs. Haynes, King and Schick, and declaratory relief is therefore an appropriate remedy as to those defendants and as to them only. There is no actual presently existing controversy between plaintiffs and the remaining named defendants, and declaratory relief is therefore not an appropriate remedy as to them.

6. Plaintiffs have not effectively cancelled their binder pursuant to the terms of the Statement of Intent, Notice of Protest and Reservation of Rights set forth in paragraph 8. Accordingly, the binder issued by plaintiffs to defendants Wake Anesthesiology Associates, Inc., and Drs. Haynes, King and Schick for the period October 1, 1975 to November 1, 1975 is still valid and in full force and effect.

The joining of these defendants on October 29, 1975 to these legal proceedings does not constitute notice of cancellation of defendants' coverage or adequate notice that the plaintiffs intend to exercise rights reserved in Statement of Intent, Notice of Protest and Reservation of Rights.

7. The binder and Statement of Intent, Notice of Protest and Reservation of Rights, should be construed strictly against plaintiffs and in favor of the insureds and any ambiguities therein should be resolved in favor of the insured defendants.

On these findings and conclusions, the court adjudged the binder issued by plaintiffs to defendants Wake Anesthesiology Associates, Inc., and Drs. Haynes, King, and Schick to be valid and in full force and effect. Plaintiffs' claim for declaratory relief against all other defendants was dismissed.

From this judgment, plaintiffs appeal.

*Jordan, Morris and Hoke by John R. Jordan, Jr. and Robert R. Price for plaintiff appellants.*

*Tharrington, Smith & Hargrove by Wade M. Smith and Steven L. Evans for defendant appellees.*

PARKER, Judge.

Appellants have not excepted to any finding of fact made by the trial court. Their only exceptions and assignments of error are directed to the court's conclusion of law No. 6 and to the conclusion of law contained in the second sentence of conclusion of law No. 5. Therefore, this appeal presents for our review only the questions whether these conclusions of law to which exceptions have been taken are supported by the findings of fact, and whether the judgment rendered is in turn supported by the find-

ings of fact and the conclusions of law made. Rule 10(a), N.C. Rules of Appellate Procedure. We hold that they were not and accordingly reverse the judgment rendered.

[1] We first address the questions presented by appellants' assignment of error to the conclusion of law No. 6 in which the court concluded as a matter of law that the binder issued to defendant-appellees, Wake Anesthesiology Associates, Inc. and Drs. Haynes, King and Schick, for the period 1 October 1975 to 1 November 1975 is still valid and in full force and effect. From the language employed by the trial court in its conclusion of law No. 6, it is apparent that the court based its conclusion that the binder is still valid on its determination that plaintiffs had "not effectively cancelled their binder pursuant to the terms of the Statement of Intent, Notice of Protest and Reservation of Rights," and that "[t]he joining of these defendants on October 29, 1975 to these legal proceedings does not constitute notice of cancellation of defendants' coverage or adequate notice that the plaintiffs intend to exercise rights reserved in Statement of Intent, Notice of Protest and Reservation of Rights." For the reasons hereinafter stated, we find the binder void from its inception. Therefore we do not reach the question whether, had it been valid when issued, plaintiffs took adequate steps to cancel it. Plaintiffs here were careful to maintain that the binder was null and void as of its inception and not that it was no longer valid because it had been effectively cancelled by them. Indeed, had plaintiffs attempted to cancel the binder, they might have waived a ground for avoiding it. "By purporting to cancel a policy rather than avoid it from its inception, the insurer may be deemed to waive a ground for avoiding it from its inception, with the consequences that if the cancellation should not be operative for any reason, the insurer will find itself in the position of having waived the ground on which it could have avoided the policy and having failed to cancel the policy; and the policy would therefore remain in force." 17 Couch on Insurance, 2d, § 67:50; *see also*, 12 Appleman, Insurance Law and Practice, § 7124.

In our opinion, whether the binder is still valid or was void from its inception depends upon the effect which should properly be given to the decision rendered by our Supreme Court in the earlier stage of this litigation, reported in *Indemnity Co. v. Ingram, Com'r of Insurance*, 290 N.C. 457, 226 S.E. 2d 498 (1976),

which held Ch. 427 of the 1975 Session Laws unconstitutional. At one time the view was expressed that "[a]n unconstitutional act is not a law; it confers no rights; it imposes no duties; it affords no protection; it creates no office; it is, in legal contemplation, as inoperative as though it had never been passed." *Norton v. Shelby County*, 118 U.S. 425, 442, 30 L.Ed. 178, 186, 6 S.Ct. 1121, 1125 (1886). Later, the United States Supreme Court receded from this broad statement of absolute retroactive invalidity, saying with reference to it:

> It is quite clear, however, that such broad statements as to the effect of a determination of unconstitutionality must be taken with qualifications. The actual existence of a statute, prior to such a determination, is an operative fact and may have consequences which cannot justly be ignored. The past cannot always be erased by a new judicial declaration. The effect of the subsequent ruling as to invalidity may have to be considered in various aspects,—with respect to particular relations, individual and corporate, and particular conduct, private and official. Questions of rights claimed to have become vested, of status, of prior determinations deemed to have finality and acted upon accordingly, of public policy in the light of the nature both of the statute and of its previous application, demand examination.

*Chicot Co. Drainage Dist. v. Baxter State Bank*, 308 U.S. 371, 374, 84 L.Ed. 329, 332-33, 60 S.Ct. 317, 318-19 (1940).

Our own Supreme Court adopted this approach in *Roberson v. Penland*, 260 N.C. 502, 133 S.E. 2d 206 (1963), in which it was held that parties who voluntarily signed a consent judgment and executed a deed on the good faith, albeit erroneous, assumption that the statute giving the husband the right to dissent from the will of his wife was valid, had no right to have the consent judgment cancelled and the deed rescinded when it was subsequently determined in other litigation that the statute was unconstitutional. In the opinion in that case, our Supreme Court quoted with approval the following statement from *McLean Coal Co. v. Pittsburgh Terminal Coal Corp.*, 328 Pa. 250, 253, 195 A. 4, 6 (1937):

> The unconstitutionality of a statute is a defense to an action only when the liability is created by the statute in question; the invalidity of an act is of no avail when the liability arises

from acts indicating the assumption of liability by parties who may, it is true, be acting only because the statute was passed, but who are, nevertheless, voluntarily assuming a relationship which creates a liability.

In the present case, unlike the situations presented in *Roberson v. Penland*, and in *McLean Coal Co. v. Pittsburgh Terminal Coal Corp., supra*, plaintiffs did not voluntarily assume any liability. If their liability was not created by the express language of Ch. 427 of the 1975 Session Laws, in a very real sense it was imposed upon them by that statute. True, the statute allowed them a choice, either to issue to any and all applicants declared by the statute to be "eligible", medical malpractice liability insurance (something which they had never previously done, did not wish to do, and which they had insufficient expertise to do successfully), or to surrender their licenses and cease writing any liability insurance in North Carolina. This was, however, a choice which our Supreme Court held the Legislature had no constitutional power to force plaintiffs to make. Clearly, giving them such a choice could not make their actions in issuing binders, rather than immediately going out of business, voluntary in a legal sense. The highwayman traditionally allowed his victim the choice of surrendering his money or his life, but when the victim responded by handing over his purse, no one seriously contended that he did so voluntarily. When the plaintiffs issued the binders here in question, they did so expressly stating that the binders were being issued under the mandate of the statute, under protest, "and not as a voluntary act of the Company." The entire record attests the truth of this statement. Plaintiffs here, unlike the plaintiffs in *Roberson v. Penland, supra*, did not voluntarily enter into a contract under the mistaken assumption that the statute was valid. On the contrary, right from the start plaintiffs here took the position that the statute might be unconstitutional, and they took prompt action to have it declared so. They knew, however, that should they hesitate in rendering prompt compliance with the statute, the Commissioner of Insurance could, and in all probability would, revoke their licenses to do business in North Carolina. At least this was true during the period before they were able to obtain the protection of a court order prohibiting him from doing so, which is precisely the period during which the binders here in question were issued. With their licenses revoked, they would

have been immediately out of business in this State. Thus, even if plaintiffs could have known positively from the start that their view as to the unconstitutionality of the statute would ultimately be sustained by the courts, they were nevertheless under powerful compulsion to comply with the statute until a protective order could be obtained. It was under those circumstances that the binders here in question were issued. We think it beyond question that they were issued solely as result of the compulsion of the unconstitutional statute and not as the voluntary acts of the plaintiffs acting under any mistaken assumption as to the validity of the statute. In view of the extreme compulsion which the statute exerted, we hold that any liability imposed on plaintiffs by issuing the binders was one which should properly be viewed as having been "created by statute." *See McLean Coal Co. v. Pittsburgh Terminal Coal Corp., supra.*

Even viewing the liability as one having been created by statute, however, the question still remains whether the unconstitutionality of Ch. 427, 1975 Sess. Laws, should be given effect retroactively from the date of the Supreme Court's opinion declaring that statute unconstitutional. In *Lemon v. Kurtzman*, 411 U.S. 192, 36 L.Ed. 2d 151, 93 S.Ct. 1463 (1973), the United States Supreme Court recognized that there is no principle which requires absolute retroactive effect to be given in every case to a decision of unconstitutionality, and that courts should consider whether retrospective operation will further or retard the operation of the decision. *See Lemon, supra,* at 199, 36 L.Ed. 2d at 160-161, 93 S.Ct. at 1468-1469. In *Lemon,* plaintiffs sought to restrain payments of public funds under contracts made with church-affiliated schools for services performed prior to a determination by the United States Supreme Court that the scheme for payment of state funds to such schools violated the Establishment Clause of the First Amendment. The Supreme Court affirmed a decision of a three-judge federal district court permitting the state to reimburse non-public sectarian schools because it determined that prospective application of the decision of unconstitutionality would not foster the constitutional infirmity of the payment scheme.

The basis on which our Supreme Court found the act creating the Health Care Liability Reinsurance Exchange unconstitutional in *Indemnity Co. v. Ingram, supra,* was that the State could not,

consistent with the Law of the Land Clause of Article I, § 19, of the State Constitution, or the Due Process Clause of the Fourteenth Amendment, conscript insurers who had never previously written medical malpractice insurance to supply a public need for such insurance at their own risk or expense. The court was concerned with the dilemma facing the insurer previously inexperienced in the field of medical malpractice insurance: "[T]o compel such company, against its will, to write health care liability insurance for whatever health care provider may see fit to apply to it therefor would subject the company to a risk of financial disaster." *Indemnity Co. v. Ingram, supra*, at 468, 226 S.E. 2d at 506. It is significant that the effect of the determination of unconstitutionality was to render the Health Care Liability Reinsurance Exchange, the medium through which the risk of loss could be transferred, nonexistent. To fail to give retroactive effect to our Supreme Court's decision in resolving the present controversy would mean that plaintiffs, who involuntarily issued the binder to defendant-appellees despite their inexperience in the field of malpractice insurance in this state, are now confronted with tremendous potential risk of loss which they are no longer able to cede to the Reinsurance Exchange. Such a result would indeed frustrate the rationale behind the *Indemnity Co.* decision.

Additionally, although defendant-appellees here, like the parochial schools in *Lemon, supra*, relied on the statute and the contract made pursuant to it in continuing to perform services, they, unlike the parochial schools, had notice that the contract was being entered into by the other party under protest and that the constitutionality of the statute was being questioned. On 24 September 1975, six days before the verbal binder to defendant-appellees was issued, plaintiffs mailed to each of their agents in North Carolina, including the Moore & Johnson Insurance Agency, the "Statement of Intent, Notice of Protest and Reservation of Rights," setting forth plaintiffs' position. On 29 September 1975, the day before the verbal binder was issued to defendant-appellees, the president of Moore & Johnson Agency wrote a letter to plaintiffs acknowledging receipt of that statement. Harry W. Moore and the Moore & Johnson Agency were independent insurance agents and as such were agents with respect to issuance of the binders not only for plaintiffs but for defendant-appellees as well. (The trial court expressly so concluded in its Conclusion

of Law No. 1, to which no exception has been taken, and that conclusion is amply supported by the findings of fact and the evidence.) "Where both the insured and the insurer have knowledge of the fact that one arranging insurance is the agent of, and is representing, both parties, he is the agent for both, and his knowledge is the knowledge of both, and the insured is bound by a limitation clause inserted in the policy with the knowledge of such agent." 3 Couch on Insurance 2d, § 25:27, p. 319. Moreover, Harry Moore testified without contradiction as follows:

> I had received a request from Wake Anesthesiology Associates, Inc. and Doctors Haynes, King and Schick for medical malpractice coverage. I had explained to them that the coverage available would be that available through the Act. I explained to them the state that existed here in North Carolina in regard to medical malpractice insurance at that time including the availability of it. I can't exactly recall whether it was during that conversation that I advised them that I had received the Notice and Statement of Intent. It could have been. It could have been actually before that conversation or afterwards. At sometime during the period of time of negotiations for this binder of insurance, they did have notice of the Statement of Intent.

It is clear, therefore, that when the verbal binder was issued on 30 September 1975, defendant-appellees had knowledge of plaintiffs' Statement of Intent, Notice of Protest and Reservation of Rights, and were on notice that plaintiffs issued the binder under protest, not as their voluntary act, and that plaintiffs intended to consider the policy "null and void as of the inception date" should they have the option to do so by reason of a court decision declaring Ch. 427 of the 1975 Session Laws invalid. Thus, defendant-appellees here, unlike the parochial schools in *Lemon, supra,* were at all pertinent times fully informed that the validity of their contract and the constitutionality of the statute under compulsion of which it was made were being attacked.

The United States District Court decision in *Lemon,* 348 F. Supp. 300 (E. D. Penn. 1972), which was affirmed by the United States Supreme Court, focused on the lack of detriment to the State of Pennsylvania in requiring payment to be made under the contracts. Here, it is clear that plaintiffs will suffer substantial

hardship if held to their involuntary contracts. The potential risk which they unwillingly assumed under compulsion of the statute was one which, had the statute been valid, they could have ceded to the Reinsurance Exchange, to be shared ratably among all liability insurers. The risk which they now must face is solely their own. Having given due consideration to the equities on either side as well as to the effect of retroactive application of the decision in *Indemnity Co. v. Ingram, supra,* we conclude that plaintiffs should not be bound by obligations forced upon them by the statute which our Supreme Court subsequently held unconstitutional.

[2] Defendant-appellees contend that the Reservation of Rights attached to their binder is void as against public policy. This contention is without merit. Our Supreme Court has held that "an agreement which violates a provision of a statute or which cannot be performed without a violation of such provision is illegal and void." *Cauble v. Trexler,* 227 N.C. 307, 311, 42 S.E. 2d 77, 80 (1947). The contract entered into by defendant-appellees here in accepting the binder for insurance coverage is not such an agreement. The Statement of Intent recited that the coverage was only contingent if Ch. 427 of the Sess. Laws was held unconstitutional. There is no indication that plaintiffs would have refused to recognize the insurance binder as valid if the statute had been held constitutional. Because the statute has now been declared void it no longer represents the public policy of this State, and plaintiffs' Statement of Intent, Notice of Protest and Reservation of Rights may be given full force and effect.

[3] Plaintiffs also assign error to the trial court's conclusion that there is no presently existing controversy between plaintiffs and defendants other than defendant-appellees. This action was originally brought by plaintiffs under G.S. § 1-264 to obtain a declaratory judgment that *all* applications received and binders issued under Ch. 427, 1975 Session Laws, were null, void and unenforceable. Plaintiffs alleged in their complaint that they had been bound on applications for health care liability insurance by their agents. Each of the associations and individual physicians to whom binders were issued was made a party to this suit. The Declaratory Judgment Act grants jurisdiction to our courts to adjudicate cases in which it appears from the allegations of the complaint that a real controversy exists between the parties, that the

controversy arises out of opposing contentions of the parties as to the validity or construction of a contract, and that the parties to the action have or may have legal rights or liabilities which are involved in the controversy. *See, Little v. Trust Co.*, 252 N.C. 229, 113 S.E. 2d 689 (1960). "The purpose of the Declaratory Judgment Act is, 'to settle and afford relief from uncertainty and insecurity, with respect to rights, status, and other legal relations'." *Insurance Co. v. Roberts*, 261 N.C. 285, 287, 134 S.E. 2d 654, 657 (1964). Although none of the defendants with respect to whom the lower court found that no actual controversy existed participated at the trial, each was made a party and had notice that an action had been brought to declare their coverage null and void. Their failure to appear at trial did not render the issue of the validity of binders nonjusticiable. There appears to be no reason for denying plaintiffs the declaratory relief which they seek. Although there may be no litigation pending as to the nonappearing defendants which might subject plaintiffs to liability on the binders, the possibility of such litigation is neither remote nor speculative. The policies which were issued provided coverage for 'occurrences', and as plaintiffs have pointed out, their risk on such policies often outlives the termination date of coverage, since the effects of negligent medical treatment occurring during the period of coverage may not become apparent for months or even years. In the meantime, unless declaratory relief is granted, plaintiffs are unable to determine whether premiums should be collected on the binders or whether any reserves should be maintained to provide for future claims based on acts of negligence which may have occurred during the periods of coverage. For this reason, we hold that the trial court erred in concluding that declaratory relief was not an appropriate remedy to determine the validity of the binders issued to defendants other than the appellees.

Judgment in favor of defendant-appellees is reversed. As to that portion of the judgment denying declaratory relief on the issue of the validity of binders issued to other defendants, the cause is remanded for further proceedings consistent with this opinion.

Reversed and remanded.

Chief Judge MORRIS and Judge MARTIN (Robert M.) concur.